Michael HARWOOD, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–96–00259–CR.

Court of Appeals of Texas,
San Antonio.

Nov. 26, 1997.

---

532

John Wilson Rowland, Law Offices of John Wilson Rowland, Comfort, for Appellant.

James Scott Sullivan, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before HARDBERGER, C.J., and LÓPEZ and ANGELINI, JJ.

## OPINION

HARDBERGER, Chief Justice.

### INTRODUCTION

Michael Harwood was tried by a jury for murder after he killed John Burwell by shooting him twelve times in the neck. A jury convicted Harwood of the lesser-included offense of voluntary manslaughter and sentenced him to ten years probation and a fine of $10,000. Harwood appeals the judgment in sixteen points of error, which can be reduced to essentially three complaints: (1) that the trial court improperly excluded evidence that would have supported Harwood's theory of selfdefense; (2) that improper jury argument on the part of the prosecution militates reversal; and (3) that the State failed to investigate and actively suppressed mitigating evidence. We affirm the judgment.

### FACTS

In 1994, Michael Harwood, then 16, shot and killed John Burwell, 26, a man everyone believed to be his friend. Harwood fired twelve times, at close range, into Burwell's neck. Harwood then dumped Burwell's body off a bridge and immediately told a friend and Harwood's father, Michael Harwood, Sr., what he had done. That same night, Harwood turned himself into the Bexar County Sheriff's Department and, while in custody, gave a voluntary statement confessing to the crime. In the statement, he claimed that Burwell had been sexually molesting him for more than a year and that, at the time of the shooting, Burwell had been attempting to force Harwood to give him oral sex. Although there was some physical evidence at

the murder scene to lend credence to this claim (an unopened package of condoms, an ice bucket, and two champagne glasses), the police did not collect this evidence. Harwood was charged with murder. Other than some minor trouble at school and some emotional difficulties, Harwood had never been in trouble before. He was released on electronic monitoring to await trial.

At trial, Harwood pleaded not guilty to murder. The State presented four witnesses against him: three members of the Bexar County Sheriff's Department and a medical examiner, Dr. Robert Bux, who had performed the autopsy on Burwell. The State's evidence essentially proved what Harwood had never denied: that he had shot Burwell and had dumped Burwell's body over a bridge. Harwood's voluntary statement revealed that he had left Burwell alive, unharmed twice. He was using Burwell's pickup and obviously could have escaped had he chosen to do so.

On cross examination, investigating officers admitted that they had not collected the evidence supporting Harwood's claim that Burwell had planned a sexual encounter between Burwell and Harwood for that evening.

The medical examiner, Dr. Bux, testified that Burwell had been shot twelve times and that eight of those shots were at extremely close range. There were also some bruises and contusions on the victim's face, which supported Harwood's claim that he and Burwell had struggled before the shooting. On cross examination, Bux testified that the trajectory of the wounds was consistent with Harwood's story that he had shot Burwell while Burwell was lying in the flatbed of the truck, with Harwood standing between Burwell's legs.

The defense also attempted to establish justification by self-defense, relying on a theory of post-traumatic stress disorder. Defense evidence showed that Burwell, ten years older than Harwood, had befriended the young man and supplied him with alcohol and pornographic movies on a regular basis. Evidence, including Harwood's original statement to police, showed that Burwell had sexually abused not only Harwood, but other young teenage boys, whom he "groomed" for such activity. A physical examination of Harwood, given at the defense's instigation nearly a year after the killing, showed some evidence of anal penetration. However, because of the length of time between any alleged abuse and the exam, the evidence was inconclusive. Expert witnesses testified that Burwell fit the profile of a predatory pedophile and that Harwood's entire sense of self had been shattered by the repeated sexual abuse and coercion through the use of alcohol, friendship, and gifts.

The defense also attempted to introduce evidence that Burwell had been acting in concert with another man, Mark Alvarado, who had actually befriended Harwood when the young man was five years old. In a statement made to police while he awaited trial, Harwood alleged that Alvarado had been sexually molesting him since he was extremely young and that Alvarado had "given" Harwood to Burwell at a party, where both men had raped the young man. The intended purpose of this testimony was to demonstrate that Harwood's reactions to Burwell's alleged advances on the night of the murder may have been reasonable to a person suffering the trauma Harwood had suffered. The trial court allowed the defense to explore, although not fully, the bad acts of Burwell, but allowed only minimal testimony regarding Alvarado.

## POINTS OF ERROR ONE THROUGH EIGHT

### Excluded Evidence

██ A trial court is given wide discretion in determining the admissibility of evidence. *Breeding v. State*, 809 S.W.2d 661, 663 (Tex.App.—Amarillo 1991, pet. ref'd). We review the trial court's exclusion of evidence under an abuse of discretion standard of review. *Id.* A trial judge has not abused her discretion unless she has "acted arbitrarily and unreasonably, without reference to any guiding rules or principles." *Breeding*, 809 S.W.2d at 663. Exclusion of evidence does not result in reversible error unless the exclusion affects a substantial right of the accused. *Id.; see* TEX.R.APP. P.

44.2(b); *see also Vega v. State*, 898 S.W.2d 359, 363 (Tex.App.—San Antonio 1995, pet. ref'd) (subjecting exclusion of evidence to harmless error analysis). In determining harm, we consider the following factors: the source of the error; the nature of the error; whether and to what extent the error was emphasized by the State; the collateral implications of the error; how much weight a juror would probably place on the error; and whether declaring the error harmless would encourage the State to repeat it with impunity. *Vega*, 898 S.W.2d at 363.

▉▉ When the excluded evidence was sought during cross examination, the Confrontation Clause of the United States Constitution is implicated. *See* U.S. CONST. amend. VI (guaranteeing right to confront adverse witnesses); *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S.Ct. 1431, 1434–35, 89 L.Ed.2d 674 (1986). Such errors are also subject to harm analysis. *See* TEX. R.APP. P. 44.2(a) (constitutional errors subject to such analysis must be reversed unless the court finds, beyond a reasonable doubt, that the error did not contribute to the conviction or punishment); *Shelby v. State*, 819 S.W.2d 544, 547 (Tex.Crim.App.1991) (Confrontation Clause claims subject to harm analysis). To determine whether harm occurred in such a case, we look to the Texas Court of Criminal Appeals opinion in *Shelby*. There, the court held that to determine whether harm exists when cross examination has been erroneously limited, a reviewing court should first assume that the damaging potential of the desired cross examination was fully realized. *Id.* Then the court must consider the importance of the testimony to the State's case, whether the testimony was cumulative, the presence or absence of corroborating or contradicting testimony; the extent of cross examination otherwise permitted; and the overall strength of the State's case. *Id.* Finally, the court must consider, in light of the first two prongs, if the error was harmless beyond a reasonable doubt. *Id.*

The complained of exclusions arise from the cross examination of two witnesses, the two investigating officers and the medical examiner, and from the direct testimony

Mike Villanueva, William Voltz, Mark Steege, Dr. Michael Arambula, and Harwood's father. We will address each of these witnesses separately.

### The Investigating Officers

Harwood's attorney attempted to cross examine the officers who investigated the murder about their lack of expertise in investigating sexual assault cases. He also wanted to examine them about what information investigators had about Burwell when they were gathering evidence. Finally, he attempted to question Sergeant Robert Morales about Morales's knowledge of a pending investigation into Mark Alvarado's involvement in alleged sexual assaults of teenage boys, including Harwood. On appeal, Harwood claims that the exclusion of this testimony violated his right to confront the State's witnesses against him. He claims that the officers' testimony could have demonstrated that the police had inadequately investigated the murder, even perhaps deliberately covering up evidence. He also hoped to support a claim of post-traumatic stress disorder by introducing testimony that Harwood had suffered from sexual abuse from an early age.

▉▉ Harwood has not demonstrated the relevance of the officers' expertise in sexual assault cases. The judge was within her discretion to exclude the evidence on that basis. In addition, we find no harm under the factors listed in *Shelby*. Testimony regarding the oversights made during the investigation would have been cumulative. The trial judge allowed Harwood to show that the condoms, ice bucket, and champagne glasses were not collected as evidence. The photographs depicting these items in the truck where Burwell was murdered were distributed to the jury. If we assume, as *Shelby* requires, that asking the officers about their expertise in sexual assault cases had its full damaging effect (if the officers had answered that they had *no* expertise), it is difficult to see how this could accomplish anything more than the pictures themselves accomplished. It was not the officers' experience that was relevant to Harwood's state of mind at the time of the murder; it was the

evidence depicted in the photographs. This evidence was before the jury.

■ Harwood's claim that he should have been allowed to question Sergeant Morales about a pending investigation of Mike Alvarado is not properly preserved. Harwood's bill of exceptions shows that Harwood had, in fact, made a statement to police regarding alleged sexual abuse by Alvarado. However, Harwood's statement regarding Alvarado was given to Detective Joe Correa of the San Antonio Police Department, not to Sergeant Morales. There is nothing in the bill of exceptions to show how Morales would have answered the question; therefore, there is nothing for this court to review. TEX.R.APP. P. 33.2.

### Medical Examiner Dr. Bux

■ Harwood complains that he should have been allowed to cross examine Dr. Bux about any information the medical examiner had about Burwell's homosexuality. This evidence was properly excluded as calling for hearsay. TEX.R. EVID. 802. Furthermore, the evidence is clearly not relevant. That Burwell may have been a homosexual could not, by itself, support the defendant's claim that Burwell abused him. Harwood claims that his confrontation rights were violated by the exclusion of this testimony because he wanted to show that the police had tried to cover up Burwell's attempted assault of Harwood that night. However, covering up knowledge of Burwell's *homosexuality* isn't relevant to this claim. *See Littleton v. State*, 91 Tex.Crim. 205, 239 S.W. 202 (1922) (evidence that victim was a Socialist was irrelevant). To be relevant, the cover up would have to be of Burwell's abusive character or of pedophilia.

### Mike Villanueva

■ Mike Villanueva is Harwood's friend and the first person Harwood told about the killing. The defense wanted to question Villanueva on direct examination about specific activities that Villanueva had observed at the Burwell home during what the defense portrayed as "sex parties." According to defense witnesses, on more than one occasion Burwell had one or more teenage boys in his home for drinking, games, and to watch pornographic movies. The defense claimed that Burwell assaulted Harwood at some of these parties, and the defense's examination of Villanueva was an attempt, in part, to prove this. Specifically, the defense asked Villanueva, "Did you wake up at any time staying over there [at Burwell's] and John [Burwell] was sleeping next to you?" The State's objection to the question was sustained.

Any error was harmless. The defense was allowed to ask, almost immediately after the exchange, "[w]hen you woke up, where was John?" Villanueva answered, "John was asleep between us [Villanueva and Harwood]." Thus, the excluded testimony was clearly cumulative and within the trial judge's discretion to exclude.

### William Voltz

William Voltz, who was 20 at the time of the trial, testified that he had been the victim of abuse, including rape, by Burwell over an extended period of time, beginning when he was about thirteen. He testified that he had lived with Burwell when he had no other place to live, but that Burwell's abuse had been so bad that Voltz had eventually tried to move to California in an attempt to escape Burwell. The defense relied upon Voltz's testimony to show that Burwell could have been the aggressor on the night he was killed.

However, the trial judge would not allow Voltz to testify to the specific details of the abuse he suffered at Burwell's hands. In Harwood's bill of exceptions, a statement by Voltz suggests that he would have testified about an incident in which Burwell and Alvarado forcibly raped him, threatening him, pushing him around, and locking him in a trailer. Both men forcibly sodomized him, one holding him down for the other. The defense wished to offer this testimony to support its theory of self-defense by showing that Burwell had acted before in the manner in which Harwood claimed at trial he had acted on the night of the killing.

■ The general rule is that evidence of a person's character is inadmissible to prove that he or she acted in conformity with

a given trait. However, character evidence is admissible under some circumstances. General evidence of the character of a victim is admissible if pertinent and offered by the accused or by the prosecution in rebuttal. TEX.R.CRIM. EVID. 405(b). A defendant claiming self-defense may introduce as evidence specific bad acts by the victim of which the defendant is aware to show the reasonableness of the defendant's apprehension of danger. See *Thompson v. State,* 659 S.W.2d 649, 653 (Tex.Crim.App.1983) (defendant may introduce violent acts of victim of which defendant is aware to show that defendant reasonably believed the force was necessary to protect himself); TEX.CODE CRIM. PROC. art. 38.36(a) (Vernon 1997) (allowing relevant state of mind evidence). Further, if there is evidence that the victim was the aggressor at the time of the killing, his prior bad acts are admissible, even if the defendant did not know about them. *Beecham v. State,* 580 S.W.2d 588, 590 (Tex.Crim.App.1979). Although still controversial, Texas has also allowed evidence of post-traumatic stress disorder in cases involving battered spouses to determine whether, because of this disorder, what is reasonable for a particular defendant might not be reasonable for society at large. See *Fielder v. State,* 756 S.W.2d 309, 319 (Tex.Crim.App.1988) (stating that evidence of battered spouse syndrome is admissible to demonstrate reasonableness of woman's fear of her husband); TEX.CODE CRIM. PROC. art. 38.36(b) (Vernon 1997) (allowing evidence of abuse of defendant when defendant raises justification as a defense).

▮ Harwood argues that he should be entitled to rely on what was formerly Texas Penal Code § 19.06 (repealed), which provides:

> In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind at the time of the offense.

TEX. PENAL CODE § 19.06 (repealed). The code of criminal procedure contains an identical provision. TEX.CODE CRIM. PROC. art. 38.26(a) (Vernon 1997). The State correctly notes that this provision does not expand the rules of evidence; all admissible evidence must still be relevant and comply with the rules of evidence. *Werner v. State,* 711 S.W.2d 639, 644 (Tex.Crim.App.1986). However, we do not find this argument dispositive, because we believe the evidence was, in fact, relevant. See *Vega,* 898 S.W.2d at 362–3 (finding evidence of defendant's "bad-blood" relationship with victim's gang relevant under 19.06 even though the relationship wasn't directly with the victim). We hold instead that, because the evidence can be viewed as cumulative, the trial court was within her discretion to exclude it. *See id.* (finding relevant evidence was within court's discretion to exclude because it was cumulative).

The portion of Voltz's testimony regarding Alvarado was at least arguably inadmissible because it didn't relate directly to Harwood's relationship with Burwell, the victim, and because there is nothing in the record to establish that Harwood knew about the incident. However, Voltz's testimony regarding Burwell was certainly relevant and admissible. Texas courts allow evidence of the victim's specific bad acts and general reputation for violence, even if the defendant is not aware of them, where there is evidence that the victim was the aggressor. *Beecham,* 580 S.W.2d at 590. Harwood had introduced evidence that Burwell was the aggressor on the night in question, and Harwood was thus entitled to introduce the specific bad acts of Burwell against Voltz. In addition, Voltz's testimony was particularly relevant because it demonstrated that Burwell had been capable of placing a young man in fear for his physical safety. Thus, because Harwood had introduced some evidence that Burwell was the aggressor (Harwood's own statement to police), he was entitled to introduce testimony that Burwell had acted similarly against third parties.

However, we cannot say that excluding the full details of the abuse of Voltz was harmful. Voltz was allowed to testify that Burwell had raped him, that Voltz was afraid of Burwell, and that Voltz felt that he could not escape

Burwell's reach. The trial judge clearly understood that such evidence was admissible, even if Harwood had no knowledge of those facts. The judge simply believed the details of the abuse were cumulative, and, because she did allow testimony that showed Burwell's violence against Voltz, she was within her discretion to exclude the details.

Harwood also wished to question Voltz about an evening that Voltz picked Harwood up from Mark Alvarado's house. This testimony was properly excluded. Harwood, in his statement to police against Alvarado, claimed that this was the night he was raped by Alvarado and Burwell. However, in his bill of exceptions statement, Voltz indicated that he did not know what had gone on that night, only that Harwood had called and asked to be picked up. The bill of exceptions does not suggest, then, that Voltz had anything relevant to offer on this subject.

### Mark Steege

Mark Steege was Harwood's first counselor after the killing. The defense complains that it wasn't allowed to question Steege fully about "sex parties" at Burwell's home. In addition, the defendant sought an answer from Steege to the hypothetical question, "Let me ask you to assume that John Burwell videotapes young boys and sex."

■ Harwood has not properly preserved this objection for appeal. The bill of exceptions is silent as to what Steege would have testified.

### Dr. Arambula

Dr. Arambula was Harwood's therapist at the time of trial. He testified that Harwood fit the profile of a victim of predatory pedo-

philes and that Burwell fit the profile of predatory pedophile. He stated directly that he believed that, given Harwood's fragile sense of self, Harwood had acted in self-defense in killing Burwell.

■ Harwood complains that he was not allowed to examine Arambula about abuse that Harwood suffered at the hands of Mark Alvarado. Harwood claims that this testimony would have supported his claim that he suffered from post-traumatic stress disorder as the result of years of sexual abuse from two men who were inseparably connected in his mind. This testimony is properly preserved in the bill of exceptions through the statement Harwood made to police in connection with the Alvarado investigation.

Specifically, Arambula would have testified that Alvarado had begun touching Harwood at an early age and had raped him when he was a preteen. This repeated abuse culminated at a party where, after getting Harwood drunk, Alvarado "gave" Harwood, as a gift, to Burwell. Harwood claims that both men raped him that night and then Alvarado never touched him again.

The State argues that the actions of *Alvarado* are not relevant to prove the violent tendencies of *Burwell* or to prove Harwood's fear of Burwell. We disagree that the incident was irrelevant. It was relevant not only because it showed Harwood's fragile sense of self-worth, but also because it suggested that Harwood may have linked the two men in his mind so that when he killed Burwell, he was striking as well at Alvarado, who had been abusing him since the young man was five years old. *Cf. Vega*, 898 S.W.2d at 362–3 (stating that evidence of defendant's relationship with victim's gang was relevant).[1] How-

---

1. Neither Harwood nor the State raised Texas Code of Criminal Procedure 38.36(b), which states, in part, that when a defendant raises a self-defense claim, relevant evidence is allowed to show family violence committed by the deceased, and relevant expert testimony is permissible regarding the state of mind of the defendant at the time of the offense, including relevant facts and circumstances relating to family violence that form the basis of the expert opinion. Tex. Code Crim. Proc. art. 38.36(b) (Vernon 1997). Two courts of appeals have determined that expert testimony is allowed only when the deceased was the actor and when the abuse involves fami-

ly violence. *See Osby v. State*, 939 S.W.2d 787, 788–89 (Tex.App.—Fort Worth 1997, pet. ref'd) (stating 38.36(b) only applies when the defendant was abused by his victim in a family violence context); *Avila v. State*, 954 S.W.2d 830, 840–42 (Tex.App.—El Paso 1997, pet. ref'd) (relying on *Osby* to hold the same). Under such a theory, Arambula's testimony would clearly be inadmissible.

It would survive the first prong of the *Osby* test. Burwell was the actor in the incident at issue. It is not only his rape of Harwood that is relevant, but the fact that he "received" Har-

ever, we do find that any error was harmless. *See id.* (finding exclusion of relevant state-of-mind testimony harmless).

During the course of Arambula's testimony, Harwood's defense attorney was allowed to ask, "You have testified that the first time [Harwood] was raped, he was raped by Mark [Alvarado] and John [Burwell], correct?" And Arambula was allowed to answer, "Yes, that's correct." Thus, evidence that Harwood was the victim of a double rape was before the jury. In addition, the trial judge allowed Arambula to state unequivocally that he believed Harwood was the victim of pedophilia, that Harwood had a shattered sense of self, and that Harwood had acted in what he believed to be self-defense. It is clear that this is the message the defense wished to get across to the jury and, while the message was not transmitted in the detail desired by the defense, we cannot say beyond a reasonable doubt that the jury did not receive it.

### *Michael Harwood, Sr.*

█ Finally, Harwood's attorney attempted to question Harwood's father about Harwood's susceptibility to predatory pedophiles by exploring Harwood's youth and the fact that he and his family were abandoned by his mother when he was an infant. The State argues that the testimony was cumulative because "there [were] volumes of evidence that showed Appellant was the perfect victim and indeed was being sexually abused by the deceased." The State argues, additionally, that the testimony was not relevant.

Harwood has preserved nothing in his bill of exceptions to suggest a link between children who are susceptible to predatory pedophiles and Harwood's state of mind at the

time of the murder. Without such a link we cannot determine what, if any, relevance this testimony might have had to his defense. To the extent that the testimony was offered to prove Harwood's particular and fragile state of mind, we agree with the State that it was cumulative. Arambula provided ample testimony on this point.

### POINTS OF ERROR NINE THROUGH FOURTEEN
#### Improper Jury Argument

In these points of error, Harwood complains that the trial court erred in handling several improper jury arguments made by the State. Specifically, Harwood complains that the trial court erred in allowing the prosecution to argue that (1) a verdict of not guilty would be rubber stamping a murder; (2) an acquittal would put future putative victims in danger; (3) the defendant was hiding behind his attorney and could not take responsibility for his actions; and (4) the jury should consider parole law in determining Harwood's sentence. We reject these claims.

█ An attorney is limited to four permissible areas of jury argument: (1) a summation of the evidence; (2) reasonable deductions from the evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement. *Dinkins v. State,* 894 S.W.2d 330, 357 (Tex.Crim.App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995). Whether reversible error was committed requires consideration of the entire argument and evidence adduced at trial, not merely isolated portions. *Drew v. State,* 743 S.W.2d 207, 221–2 (Tex.Crim.App. 1987), *cert. denied,* 512 U.S. 1266, 115 S.Ct. 5,

---

wood as a gift. This is unlike *Werner,* where the Texas Court of Criminal Appeals rejected a Holocaust Survivor's Syndrome claim. *Werner v. State,* 711 S.W.2d 639, 646 (Tex.Crim.App.1986). In that case, the defendant claimed that his state of mind arose from the acts of third parties who had no tangible connection to what the victim had done. *Id.* at 643–44. Here, however, the victim's act of receiving Harwood as a gift under such brutal circumstances speaks directly to Burwell's character and Harwood's reasonableness in being afraid of him. Clearly, Burwell was the actor, and his act of "receiving" Harwood is inseparable from Alvarado's act of "giving" him

and also inseparable from the circumstances under which the exchange occurred. Thus, we believe this testimony would qualify under the first prong of such an analysis. Clearly, however, it would not survive the second prong; neither Burwell nor Alvarado were members of Harwood's family.

At any rate, we are not fully persuaded that the court of appeals decisions cited have rendered the inevitable reading of the provision, and we do not reach that issue today, as we find that any error in excluding the testimony regarding Alvarado was harmless.

129 L.Ed.2d 906 (1994). Although an argument that falls outside the four permissible areas is generally erroneous, it is usually cured by an instruction to disregard the argument. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex.Crim.App.1996).

■ Any error in jury argument is subject to harmless error analysis. *Orona v. State*, 791 S.W.2d 125, 129–30 (Tex.Crim.App. 1990). When looking for harm in jury argument error, a reviewing court looks at the probable impact of the error on the jury in light of the existence of other evidence. The court must determine whether the error at issue might have prejudiced the jury's decision making, and whether the jurors were able to properly apply the law to the facts in order to reach a verdict. *Id.* Error in jury argument will not be reversible unless, in light of the record as a whole, the argument is extreme or manifestly improper, violates a mandatory statute, or introduces new facts harmful to the accused into the trial. *Bell v. State*, 724 S.W.2d 780, 803 (Tex.Crim.App. 1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). Error in jury argument is preserved by an objection that comports with the point of error raised on appeal. Tex.R.App. P. 33.1; *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997); *Drew*, 743 S.W.2d at 220.

■ The first jury argument that Harwood complains of is the State's statement to the jury that if it returned a verdict of not guilty in this particular case, it would have "rubber stamped a murder" and would have "told the defendant that he has a right to decide who to kill and when to kill them." Harwood claims that, in this statement, the State erroneously recited the law of self-defense.

We believe that this was an appropriate comment on the evidence as the State saw it. Evidence was before the jury that Harwood had acted not in self-defense, but deliberately. He had left Burwell twice before returning and killing him. The State was entitled to argue that Harwood had murdered Burwell. *See Sikes v. State*, 500 S.W.2d 650, 652 (Tex.Crim.App.1973) (prosecutor's statement, "I think [the defendant] is just as guilty as he can be" was a reasonable deduction from the evidence).

■ The second jury argument that Harwood complains of is the prosecution's suggestion to the jury that if it elected to acquit, Harwood would be a threat to anyone who offended him. This argument referred to evidence that, after the killing, Harwood had threatened someone whom he had seen talking to his girlfriend at school. The defense attorney objected, stating that the argument asked the jury to speculate outside the record. The objection was sustained, and the judge told the jury to disregard the statement. Harwood argues on appeal that the error was harmful because the statement was directed at a central issue in the case— whether Harwood had acted in self-defense. He maintains that the error was incurable.

The State contends that this was an appropriate deduction from the evidence and an appropriate plea for law enforcement. *See Stone v. State*, 574 S.W.2d 85, 90 (Tex.Crim. App.1978) (allowing state to argue, "think about the other children ... that are subjected to this type of conduct"). However, this court need not reach this determination. The error was cured by the instruction. Moreover, it cannot be seen as harmful. Harwood was sentenced to ten years probation; he left the courthouse the day his sentence was handed down. The jury could not have been afraid that he would harm one of them if they allowed him to walk free.

■ The third and fourth arguments that Harwood complains of are statements made during the punishment phase of the trial that Harwood was hiding behind his attorney and behind his claim of self-defense. On appeal, Harwood claims that the State was striking at the defendant over counsel's shoulders and that the argument was an unconstitutional comment on Harwood's right to remain silent. *See* U.S. Const. amend. V (protecting defendants against self-incrimination); Tex. Const. art. 1, § 10; *see also* Tex.Code Crim. Proc. art. 38.08 (Vernon 1997) (prohibiting State from commenting on defendant's failure to testify on his own behalf).

Harwood's attorney did not specifically object at trial that Harwood's Fifth Amendment rights were violated by the argument. Harwood contends on appeal that the basis of his objection is apparent from the record. *See* TEX.R.APP. P. 33.1(a)(1)(A). Assuming this to be true, we find that no Fifth Amendment violation occurred. In order to violate the Fifth Amendment, the language must be either manifestly intended, or of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *Angel v. State*, 627 S.W.2d 424, 426 (Tex.Crim.App. 1982). Here the State's remark was made as a response to the claim of self-defense and the claims that Harwood acted as he did because he was abused. The State's central point in this portion of its argument was to suggest that Harwood was attempting to avoid direct responsibility for his actions. In this context, we do not believe the statement was manifestly intended or would necessarily lead the jury to believe that it was a comment on the defendant's failure to testify. Although the prejudicial effect of a *direct* comment on the failure to testify is often incurable, an indirect comment is reversible when it calls for a denial or response that only the defendant can give. *De Los Santos v. State*, 918 S.W.2d 565, 570 (Tex.App.—San Antonio 1996, no pet.). The accusations here did not call for such a response or denial; they addressed, generally, the defense that Harwood raised through numerous witnesses. We believe that in this case, given the ambiguous nature of the statement, the trial judge's sharp reprimand to the State ("you know better than that") cured any error.

Harwood also claims that the State's remarks were an indirect attack on Harwood through his attorney. Improper attacks on the defendant's attorney are often referred to as "striking at the defendant over the shoulders of counsel." *Lewis v. State*, 529 S.W.2d 533, 534 (Tex.Crim.App.1975). Such attacks are manifestly improper because "they serve to inflame the minds of the jury to the accused's prejudice." *Wilson v. State*, 938 S.W.2d 57, 59 (Tex.Crim.App. 1996). The error is reversible if there is a reasonable possibility that the improper argument might have contributed to the appellant's conviction. *Id.* at 61.

Harwood objects specifically to the prosecutor's statements that Harwood "cannot accept responsibility," that he was "hiding behind his attorney," and that he was "hiding behind experts."

We do not accept Harwood's characterization of these remarks as indirect attacks on him through his attorney. They are fairly direct attacks against Harwood himself. This case is not comparable to cases such as *Lewis*, where the court of criminal appeals held that suggesting that the defense attorney's oath did not preclude him from lying to the jury was an indirect attack on the defendant. *Lewis*, 529 S.W.2d at 534. Nor is the State in these arguments suggesting that Harwood was lying when he pleaded not guilty. *See Lopez v. State*, 500 S.W.2d 844, 846 (Tex.Crim.App.1973) (finding improper jury argument where State accused lawyers and the defendant of lying when they said "not guilty"). In *Lopez*, the court found error because (1) the State called the defendant's attorneys liars, thus indirectly attacking the defendant; and (2) the entry of the defendant's guilty plea is not testimony before a jury under oath and so not appropriate for attack during jury argument; and (3) the comment denied the defendant the presumption of innocence to which he was entitled. Here, the State was attacking sworn testimony that presented Harwood's version of events. The State was properly summarizing the evidence from its perspective, and it was properly making deductions from that evidence, not from extra-evidentiary pleadings.

Finally, Harwood argues that the prosecution committed improper jury argument by stating that the jury should find that Harwood used a deadly weapon in the killing because "it is important to the parole charge, if a deadly weapon finding is made he will serve half time of whatever sentence you decide is appropriate." Harwood's attorney objected, and the trial court instructed the jury to follow the law as stated in the charge and denied the request for a mistrial.

A jury may not consider or apply parole law in making punishment determinations. *Kearney v. State,* 630 S.W.2d 934, 935 (Tex.Crim.App.1982). Clearly, then, this argument was erroneous. However, the argument was cured by the judge's instruction directing the jury to the charge. Furthermore, the error was harmless. *See Smith v. State,* 898 S.W.2d 838, 881 (Tex.Crim.App. 1995) (subjecting similar argument to harmless error analysis). The jury gave Harwood probation, which makes the issue of parole moot.

## POINTS OF ERROR FIFTEEN AND SIXTEEN

### Failure to Disclose Exculpatory Evidence

In his final two points of error, Harwood claims that the State suppressed and failed to disclose exculpatory material and relevant evidence from the defense and that the trial court erred by refusing to hold an in camera review of all State evidence to determine if any of it was undisclosed and exculpatory. Specifically, Harwood complains that a champagne bucket and an unopened package of condoms[2] were not collected as evidence because investigators were not informed that the defendant had made a claim that he was sexually abused. In addition, Harwood claims that videotapes portraying sex between adults and teenage boys existed and were in State custody. We overrule these points.

The Due Process Clause of the United States Constitution requires the State, in criminal cases, to disclose all exculpatory evidence in its possession. U.S. CONST. amend. XIV; *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963); *see also Thomas v. State,* 841 S.W.2d 399, 404 (Tex.Crim.App. 1992). Although the defense does not have an absolute right to gain possession of such evidence, it has a right to have it reviewed by the trial court for a determination of its materiality to the case. *Pennsylvania v. Ritchie,* 480 U.S. 39, 57–58, 107 S.Ct. 989, 1001–02, 94 L.Ed.2d 40 (1987).

To determine whether the suppression of evidence requires a reversal, Texas courts have considered three factors: (1) whether the prosecution suppressed evidence or failed to disclose evidence; (2) the favorable character of the evidence for the defendant; and (3) the materiality of the evidence. *Thomas,* 841 S.W.2d at 404; *O'Rarden v. State,* 777 S.W.2d 455, 458 (Tex.App.—Dallas 1989, pet. ref'd). Reversal is required only if all three factors are met. *O'Rarden,* 777 S.W.2d at 458. Favorable evidence includes both exculpatory evidence and impeachment evidence. *Id.* Material evidence is that without which, the confidence in the outcome of the proceeding is undermined. *Thomas,* 841 S.W.2d at 404.

The missing evidence complained of meets the second and third prongs of the test—it was at least somewhat favorable to the defense because it supported, loosely, the theory that a sexual assault was taking place at the time of the murder. We will accept Harwood's argument that the evidence was material. It seems probable that, had the jury not known of these items present when Harwood killed Burwell, it might not have accepted Harwood's argument that he was the victim of sexual abuse that night[3].

However, the first prong of the test is not satisfied. It is not clear that the State *suppressed* this evidence. The presence of the package of condoms and the champagne bucket was proven to the jury through photographs presented at trial, admissions by the investigating officers, and arguments by the defense attorney. In *O'Rarden,* the defense learned, on the opening day of trial, of a report in the State's possession that supplied evidence that the defendant had not sexually assaulted a child. *O'Rarden,* 777 S.W.2d at 457. Although the defense was able to actually use the evidence at trial, the court of

---

2. Harwood also complains of the exclusion of two champagne glasses. However, at the defense's request, these were eventually presented at trial. Their original exclusion cannot be considered harmful. Any harm was cured.

3. The jury's decision to find Harwood guilty of manslaughter suggests that the jury did believe that Harwood had acted out of provocation, but did not accept that he had acted wholly justifiably.

appeals reversed the defendant's conviction because it accepted the appellant's argument that had the defense known about the evidence before trial, it would have strategized differently. *Id.* at 458.

Here, the defense knew from the beginning about the evidence, and the defense clearly based its strategy on its existence. That these items were present in the pickup was never denied by the State. Thus, although clearly relevant items of evidence were not seized by police, the State did not actually *suppress* those items. Further, even if we were to hold that the State had suppressed the items, no harm occurred, because the jury had ample information that the items were present.

 Of course, videotapes that portrayed the victim engaging in sexual acts with teenage boys, especially if the sex were violent or coerced, would have been both favorable and material to the defendant. However, the State claims it knows nothing of such videotapes. The State is not obligated to produce evidence of which it has no knowledge, and Harwood has not demonstrated that the State knew about or ever possessed the tapes. *See Hafdahl v. State*, 805 S.W.2d 396, 399 n. 3 (Tex.Crim.App.1990) (*Brady* does not require disclosure of information that is not in the State's possession and that is not known to exist), *cert. denied*, 500 U.S. 948, 111 S.Ct. 2250, 114 L.Ed.2d 491 (1991), *rev'd on other grounds, Madden v. State*, 799 S.W.2d 683, 686 n. 3 (Tex.Crim. App.1990). Although testimony concerning tapes did come up at trial, this testimony was given by defense witnesses.

### Conclusion

The record makes it clear that the jury was convinced that Harwood had suffered abuse at Burwell's hands. The only message sent from the jury room during its deliberations was a question to the trial judge: did the jury have to sentence Harwood to jail time? Faced with up to twenty years in jail (or life imprisonment, if convicted of murder), Harwood received ten years probation and, perhaps more importantly, the court mandated that he remain in counseling and on medication as a condition of that probation.

The jury's verdict suggests that it believed Harwood's version of the events, but simply did not believe that his story provided sufficient justification for total exoneration. Because we believe the jury had enough admissible and credible evidence upon which to make that determination, we affirm the judgment.