Timotheo RIVERA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–00–00547–CR.

Court of Appeals of Texas,
San Antonio.

March 27, 2002.

Rehearing Overruled April 23, 2002.

Discretionary Review Refused
Oct. 2, 2002.

Mark Stevens, San Antonio, for Appellant.

Michael P. Miklas, III, Assistant Criminal District Attorney, San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice and KAREN ANGELINI, Justice.

Opinion by KAREN ANGELINI, Justice.

Timotheo Rivera was convicted of murder and sentenced to life imprisonment. He appealed, alleging error during the punishment hearing. We agreed and remanded the cause for a new hearing. On remand, the jury sentenced Rivera to forty-years imprisonment. Rivera now brings six issues relating to the punishment hearing. We overrule all issues and affirm the judgment of the trial court.

## VOIR DIRE

In his first and second issues, Rivera contends that the trial court should have permitted him to ask the venire panel the following question: Assuming Timotheo Rivera testifies, would you automatically disbelieve him simply because he is the defendant? The State objected, arguing that the question was an improper commitment question. *See Standefer v. State*, 59 S.W.3d 177, 180 (Tex.Crim.App. 2001).[1] The trial court sustained the objection but ruled that Rivera could restate the question in general terms: Assuming a defendant testifies, would you automatically disbelieve him simply because he is the defendant? Rivera chose not to restate his question in this manner. Rivera did, however, ask the venire panel:

Well, several of you have said that you might be prejudiced in this case. Any-

body think you'll be prejudiced against [Rivera] as [a] witness without having heard what he has to say yet? Anybody else other than the people who have already spoken? ... Will you listen to him? Has anybody made up their mind that they are not going to listen to this man?

Rivera was, thus, able to ask the venire panel the substance of his question.

Conducting voir dire rests within the sound discretion of the trial court. *See Howard v. State*, 941 S.W.2d 102, 108 (Tex. Crim.App.1996). Although a trial court has the right to impose reasonable limitations on voir dire, it abuses its discretion by refusing to allow a defendant to ask a proper question. *See id.* Hypothetical questions are permitted to ascertain the views of prospective jurors and help explain the law, but questions may not be asked to commit venire persons to a position based on a set of circumstances analogous to the case in question. *Atkins v. State*, 951 S.W.2d 787, 789 (Tex.Crim.App. 1997). While Rivera's question was a commitment question, not all commitment questions are improper. *Standefer*, 59 S.W.3d at 181. The law requires jurors to make certain types of commitments. *Id.* "When the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard."[2] *Id.* If a venire person responded to Rivera's question by stating that he would automatically disbelieve Rivera simply be-

---

1. "[A] question is a commitment question if one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question." *Standefer*, 59 S.W.3d at 180.

2. For example, questions concerning a juror's ability to consider the full range of punishment for a particular offense are proper com-

mitment questions. *Standefer*, 59 S.W.3d at 181. "[W]here the law does not, however, require the commitment, a commitment question is invariably improper." *Id.* "For example, a prospective juror is not challengeable for cause simply because he does not consider a particular type of evidence to be mitigating." *Id.*

cause he was the defendant, that venire person would be stricken for cause. Rivera's question was, therefore, a proper commitment question, and the trial court erred by prohibiting it. Errors, however, are only reversible if they are harmful. *See* Tex.R.App. P. 44.2.

■■ The right to pose proper questions during voir dire is included within the right to counsel under the Texas Constitution. *Gonzales v. State*, 994 S.W.2d 170, 171 (Tex.Crim.App.1999). We must reverse the judgment unless we determine beyond a reasonable doubt that the error did not contribute to the punishment. Tex.R.App. P. 44.2(a); *Gonzales v. State*, 2 S.W.3d 600, 604 (Tex.App.-Texarkana 1999, pet. ref'd). Rivera argues that the error was harmful, because had he been allowed to ask the question to the venire panel and had a venire person admitted to being prejudiced, the venire person "would have been challengeable for cause for having a bias against the law which guarantees a defendant the right to testify." The trial court's error, however, was not harmful. Even under the more stringent standard for constitutional violations, Rivera suffered no harm. The trial court informed Rivera that he could ask his question more generally. Rivera chose not to do so. Moreover, Rivera asked the substance of his question in several different ways. As such, Rivera was able to intelligently exercise his peremptory challenges and any challenges for cause. We overrule Rivera's first and second issues.

### PRIOR ACTS OF VICTIM

■ In his third and fourth issues, Rivera argues that the trial court violated Texas Rule of Evidence 405(a) and the Sixth Amendment to the Constitution when it prohibited Rivera from questioning a witness about a prior violent act by the victim. A trial court is given wide discretion in determining the admissibility of evidence. *Harwood v. State*, 961 S.W.2d 531, 536 (Tex.App.-San Antonio 1997, no pet.). We review the trial court's exclusion of evidence under an abuse of discretion standard. *Id.* A trial court has not abused its discretion unless it has "acted arbitrarily and unreasonably, without reference to any guiding rules or principles." *Id.*

■ Character evidence is ordinarily inadmissible unless an exception applies. *Martinez v. State*, 17 S.W.3d 677, 687 (Tex. Crim.App.2000). Rivera argues, however, that this specific instance of family violence by the victim was admissible here, because the State opened the door through its examination of Abel Rivera, an eyewitness:

Q: Now, did you have a friend named Gilbert Vasquez [the victim]?

A: Yes, I did.

Q: What was his nickname?

A: We called him Psycho.

Q: What was the reason you called him Psycho?

A: He was kind of funny and crazy all the time.

Q: Okay. Was it simply because he was crazy funny or was it because he was crazy mean?

A: No. Crazy funny.

Q: What kind of things would he do?

A: Well, he was always laughing and making jokes and stuff like that.

Rivera maintains that this exchange created a false picture of the victim's peaceable nature in the minds of the jury members, and so, the trial court should have allowed him to introduce the victim's prior conviction for family violence. We disagree. The State never asked the witness for his opinion as to whether the victim was peaceable or whether he had a reputa-

tion for peaceableness. The witness testified about the events at the scene of the crime as an eyewitness, not as a character witness. His brief testimony that the victim was "crazy funny," which was elicited to explain a nickname, did not convert him to a character witness. Finally, the witness's testimony was not evidence of the victim's peaceable character. *See Martinez,* 17 S.W.3d at 687. A funny person does not equate to a peaceable person. As such, the victim's prior violent act was inadmissible. But even if we were to find that the witness's testimony had some small tendency to falsely confer an impression of peaceable character, the trial court would be within its discretion in excluding the evidence. *See id.* Issues three and four are overruled.

### CLOSING ARGUMENT

 In his final two issues, Rivera maintains that the trial court erred by overruling his objection to the State's improper jury argument. Proper jury argument falls into four general areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement. *Wesbrook v. State,* 29 S.W.3d 103, 115 (Tex.Crim.App.2000), *cert. denied,* 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001). We must consider the State's remarks in context. *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim.App. 1988). Rivera objected to two statements made by the State. The first statement referred to the community:

> Okay. So [Rivera] gets out in '97. The first time—So anyway, what he's been sentenced to totally is 57 years. Fifty-seven years of his life is the total sentence and he's done 13. When he was arrested, this 12–year sentence and all those cases ran concurrently, that was a big break. Then he got another big break when he had only four years to do. He gets out and four years later, he gets a 20–year sentence. He gets another big break and only does four years. Four years and that's the same. This is the same and yet look, this is eight years difference. So, he gets out in 1990, he commits another offense. He gets 25 years and he gets another break and he only does one more year than what he's done before. He has gotten break after break after break. The authorities at the Texas Department of Criminal Justice, the prison and the parole authorities have consistently and repeatedly misjudged this man. Are you going to do the same? Don't you know that the first time when he was going to get out, they had before them that he didn't have a history of getting in trouble at prison and that he was a trustee and that he was doing well. They had all that information and in their wisdom, they let him out four years later. And they had the wisdom again a second time to look at his status and see no infractions, trustee status again, give him a break, and they let him out in four. And they had it again. And you know what? Each time they were wrong. Each time. The last time they were the most wrong because he had only been on parole for one year or less. He said he got out in July or August of '96, and this happened in June of '97. One year. I'll tell you what's ridiculous, ladies and gentlemen, it is ridiculous to come up here and tell you, ladies and gentlemen, that because somebody doesn't have a violent history means that they're not going to ever commit a violent crime in their lives. Does that mean that any time that a burglar [who has] been to prison three times or more comes to court for murder, we're going to say you know what, you've never had a violent history, we'll

give you a break. Good boy. We'll only give you 25 or 30 or 40. That's ridiculous, ladies and gentlemen.... And, ladies and gentlemen, he was on parole when he committed this offense. On parole. *This is exactly what members of our community look at and read about in the paper and say this is ridiculous.*

(emphasis added). Rivera contends that this argument improperly appealed to community expectations. The State responds that the argument was a proper plea for law enforcement.

■ Simply mentioning the community is not necessarily improper during jury argument. Courts holding that an argument impermissibly pressured a jury to assess punishment to meet the expectations of the community invariably refer directly to the demands or expectations of the community for a particular verdict. *Smith v. State*, 966 S.W.2d 111, 112 (Tex. App.-Beaumont 1998, pet. ref'd). For example, the following arguments improperly appeal to community expectations: "Now, the only punishment that you can assess that would be any satisfaction at all to the people of this county would be life [imprisonment]," *Cortez v. State*, 683 S.W.2d 419, 420, 421 (Tex.Crim.App.1984); and "So I ask you, this is a hard decision that you have to make, but I will tell you on behalf of the State of Texas, an aggravated sexual assault such as this, probation is not what this community and what the State would want." *Mata v. State*, 952 S.W.2d 30, 33 (Tex.App.-San Antonio 1997, no pet.).

■ A reference to the community which asks the jury to represent the community, however, is a proper plea for law enforcement. *Smith*, 966 S.W.2d at 112. The State may make a proper plea for law enforcement, including arguing the relationship between the jury's verdict and the deterrence of crime in general, arguing that the jury should deter specific crimes by its verdict, and arguing the impact of the jury's verdict on the community. *Borjan v. State*, 787 S.W.2d 53, 55–56 (Tex. Crim.App.1990). Such arguments that are considered proper include: (1) "[J]urors are sick and tired of this. Jurors are tired of crime because jurors such as yourself are members of the community you represent. You represent the community." *Caballero v. State*, 919 S.W.2d 919, 924 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd) (alteration in original); and (2) "I am asking you to enforce it. I'm asking you to do what needs to be done to send these type of people a message to tell them we're not tolerating this type of behavior in our county." *Goocher v. State*, 633 S.W.2d 860, 864 (Tex.Crim.App.1982).

Read in context, it is apparent that the State, like in *Caballero*, was arguing that Rivera had been punished without success in the past and should receive a more severe sentence here. This is a clear plea for law enforcement. *See Caballero*, 919 S.W.2d at 924. Further, the State did not unequivocally refer to community expectations of a particular punishment. *See Smith*, 966 S.W.2d at 113. The trial court did not, therefore, err in overruling Rivera's objection.

Rivera also objected to the following argument:

A minimum. I'm talking about the span between 60 years and 99 years or life. Any number in between there, it's a minimum of 30, any number. So, remember when I talked about if it's a 50–year sentence, then it's a minimum 25–year sentence. I don't know if y'all remember that. But I said that sometimes juries want to know what's really a matter of semantics. It's just words that we use in the legal system. But why, ladies and gentlemen, if 60 years is the same as life, minimum number of

years wise, why would you give him the break and say 60 years? Why? *After all these breaks that he's been given, why wouldn't you give the break to the victim's family and let them hear what they believe is the appropriate punishment?*

(emphasis added).

Rivera argues that this statement about the victim's family introduced evidence outside the record. The State again responds that the argument was a proper plea for law enforcement. We agree. Rivera relies on *Pimentel v. State*, 710 S.W.2d 764 (Tex.App.-San Antonio 1986, pet. ref'd), to support his position. *Pimentel*, however, is distinguishable from the facts here. The prosecutor in that case argued that he "could have brought in the entire San Antonio Police Department to tell the jury that [the appellant] has a bad reputation." *Pimentel*, 710 S.W.2d at 774. This statement clearly attempted to introduce character evidence that had not been presented at trial. Unlike in *Pimentel*, however, the State here could reasonably infer from the heinous nature of the murder that the victim's family would want Rivera to be punished.

The court of criminal appeals addressed a case with similar facts in *Martinez v. State*, 17 S.W.3d 677 (Tex.Crim.App.2000). The prosecutor in that case argued, "The family of the murdered victims, the family, the victims themselves, they cry out to you, for the death penalty in this case." *Id.* at 692. Although the court of criminal appeals declined to decide whether the trial court erred by overruling the defendant's objection to this statement, the court noted that the prosecutor's comment could arguably be justified as a plea for law enforcement. *Id.* Instead, the court performed a harmless-error analysis under Texas Rule of Appellate Procedure 44.2(b). *Id.* It balanced three factors: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the punishment assessed. *Id.* at 692–93. The court found the degree of misconduct, if any, to be relatively mild. *Id.* at 693. It noted that the jury would not be surprised to hear that the victim's family

would be upset with appellant or that they would want retribution. And the prosecutor did not attempt, through this argument, to convey any specific facts about the effect of the victims' deaths upon their families. Instead, the prosecutor was pleading with the jury to give the death penalty because the record before the jury showed that the defendant deserved it. To the extent that the prosecutor conveyed facts outside the record, such facts had no tendency to adversely influence the jury against appellant beyond the influence exerted by a wholly legitimate plea for law enforcement.

*Id.* Although the trial court did not give a curative instruction, the court of criminal appeals noted that the State "did nothing to emphasize the allegedly erroneous comments made. The comments were a very small portion of the State's entire argument at punishment." *Id.* Discussing the third factor, the court noted that the appellant's crime was especially egregious and so, that factor weighed heavily in the State's favor. *Id.*

As in *Martinez*, we find that the degree of misconduct, if any, was relatively mild. The jury could not have been surprised to hear that the victim's family would want Rivera to be punished. Moreover, the State did not mention specific family members, or the effect of the victim's death on them, but instead argued in generalities. While the trial court did not give an instruction, the State's comment about the victim's family was a very small portion of

its entire argument. Finally, the third factor weighs in favor of the State. Rivera's crime of murder was egregious, and he was a habitual offender. The jury heard evidence that Rivera was sentenced to twelve years in 1979 for burglary and possession of a controlled substance. In 1986, Rivera was again sentenced to twenty years for burglary. Rivera was sentenced again in 1990 to twenty-five years for delivery of heroin. Rivera was still on parole at the time of the murder, having been released from prison only the year before. Despite this evidence, the jury sentenced Rivera to only forty years even though they could have sentenced him to life imprisonment.

Balancing all three factors, we find that any error associated with the State's comments were harmless. We overrule Rivera's fifth and sixth issues.

### CONCLUSION

Having overruled all issues, we affirm the judgment of the trial court.