

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00083-CR

VINCENT SPRING                                                        APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Vincent Spring appeals his conviction for unlawfully carrying a weapon. *See* Tex. Penal Code Ann. § 46.02(a), (c) (West Supp. 2012). In four issues, Spring argues that the evidence is insufficient to support his conviction, that he was denied his right to a speedy trial, and that the State failed (a) to

---

[1]*See* Tex. R. App. P. 47.4.

provide reasonable notice of its intent to use extraneous-offense evidence and (b) to timely turn over *Brady* material. We will affirm.

## II. BACKGROUND

Barbara Calvert owns J Corral Club (J Bar), a bar located in Justin, Texas. J Bar is licensed by Texas to sell alcoholic beverages. Calvert posted a picture of Spring behind the bar to alert employees that he was not allowed in J Bar "because of Jody Irons," a waitress at J Bar.

On March 17, 2010, Diana Densmore was working at J Bar when she saw Spring walk to the back wall by a pool table and begin pacing "like he was casing the place." Densmore alerted Calvert, who told Densmore to call the police. When police arrived at J Bar, Densmore saw Spring put a "black cylinder" on a nearby shelf behind a container of pool-cue chalk. The officers arrested Appellant and took him out of J Bar after Calvert showed one of them "a piece of paper".[2] Densmore then told Calvert that she saw Spring put a black cylinder on a shelf by the pool table before he was arrested. Densmore and Calvert went to the shelf and found a black cylinder behind the container of pool-cue chalk. Calvert gave the cylinder to one of the police officers. The object was a collapsible baton normally used "for personal protection and to inflict injury" and capable of causing serious bodily injury.

---

[2]Presumably, this paper was a copy of a protective order that Irons had obtained against Spring after their romantic relationship had ended. Irons was not at J Bar on March 17. The trial court excluded any evidence of the protective order at the guilt-innocence stage of trial because it was too prejudicial.

2

A grand jury indicted Spring for unlawfully carrying a weapon by intentionally or knowingly carrying "a club, to wit: an expandable baton," in a place licensed to sell alcoholic beverages. The indictment contained enhancement paragraphs alleging that Spring had previously been convicted of robbery and aggravated assault, both felonies.

Before trial, Spring requested that the State produce any evidence "that may be exculpatory on the issue of guilt or mitigating on the issue of punishment, including all impeaching material." Spring also filed a request for notice of the State's intent to introduce evidence of other crimes, wrongs, or acts at the guilt-innocence phase of the trial and of its intent to introduce Spring's prior criminal record at the punishment phase. See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (West Supp. 2012); Tex. R. Evid. 404(b), 609(f). Spring further requested that a subpoena issue for Calvert and included a requirement that she "produce . . . [e]mployment records for Jody Irons 30 days before and 30 days after 3/17/2010." See Tex. Code Crim. Proc. Ann. art. 24.02 (West 2009).

The State notified Spring that it intended to introduce his criminal record "in its Case in Chief or during punishment" ("first notice of intent"). The first notice of intent included Spring's alleged commission of "Unauthorized Use of a Motor Vehicle on November 17, 2010, and eleven other offenses."[3] The State later

---

[3]The State concedes that the date of this offense was actually November 1, 2010. Appellant raises no complaint that this date error equated to unreasonable notice of the extraneous offense.

3

amended its notice to include seventeen additional offenses and again included the unauthorized-use-of-a-motor-vehicle offense but clarified that it was a pending case ("amended notice of intent"), for a total of twenty-eight offenses.

A jury convicted Spring of unlawfully carrying a weapon as alleged in the indictment. At punishment, Spring pleaded true to the aggravated-assault enhancement paragraph.[4] The jury assessed Spring's punishment at twenty years' confinement and a $10,000 fine. This appeal followed.

### III. EVIDENTIARY SUFFICIENCY

In his fourth issue, Spring argues that the evidence is insufficient to support his conviction. We construe his argument as relying upon the same rationale that he articulated in his motion for a directed verdict—that there is no evidence that the collapsible baton is a club or prohibited weapon capable of causing serious bodily injury.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to

---

[4]The State elected to proceed solely on this paragraph at punishment and not on the robbery enhancement additionally alleged in the indictment.

draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011). We must presume that the fact-finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903.

A person unlawfully carries a weapon if the person intentionally or knowingly carries on or about his person a club on a premises licensed to serve alcoholic beverages. Tex. Penal Code Ann. § 46.02(a), (c). A club "means an instrument that is specially designed, made, or adapted for the purpose of inflicting serious bodily injury or death by striking a person with the instrument," including but not limited to blackjacks, nightsticks, maces, and tomahawks. *Id.* § 46.01(1) (West Supp. 2012).

Sarah Reedy testified that she dated Spring in March 2010 and that he told her that he had gone to J Bar with a "folding baton" to "seek revenge for the ones that had [previously] damaged his property." Densmore and Calvert found a "black cylinder" that Densmore had seen Spring leave inside J Bar. "Tire thumper" was hand carved on the side of the baton but was not printed on by the baton's manufacturer. The police officer to whom Calvert gave the black cylinder—Deputy Dustin McConnell—testified that the cylinder was a metal, collapsible baton. He also stated that such a baton is capable of causing serious bodily injury or death. Deputy McConnell testified that collapsible batons, like the one that Spring told Reedy he had brought to J Bar, are routinely carried and

used by law-enforcement officers for protection, to "inflict injury," and to gain compliance thorough the infliction of pain. This evidence is sufficient to show that the collapsible baton functioned as a weapon and was specially designed or made to inflict serious bodily injury or death. *See* Tex. Penal Code Ann. § 46.01(1). Indeed, there was no testimony at trial that the collapsible baton was designed or made to do anything other than inflict injury. *See Warr v. State*, No. 05-06-00847-CR, 2007 WL 2052168, at *2 (Tex. App.—Dallas 2007, no pet.) (not designated for publication) (holding evidence that "rungu" was designed to hunt and kill animals was sufficient to find it was designed as a weapon and, thus, was a club under sections 46.01 and 46.02); *cf. Meza v. State*, 652 S.W.2d 399, 400–01 (Tex. Crim. App. 1983) (holding evidence insufficient to show "club" was specifically designed, made, or adapted to inflict serious bodily injury or death); *Reisner v. State*, 627 S.W.2d 728, 729 (Tex. Crim. App. [Panel Op.] 1982) (holding bracelet not a club under section 46.02 because no evidence bracelet was designed, made, or adapted to inflict injury or death); *Alexander v. State*, 617 S.W.2d 269, 270 (Tex. Crim. App. [Panel Op.] 1981) (holding motorcycle chain with nylon cord on the end was not club under section 46.02 because no evidence that addition of nylon cord acted to adapt chain for purpose of inflicting injury or death); *State v. Ortiz*, 286 S.W.3d 514, 517–18 (Tex. App.—Corpus Christi 2009, pet. ref'd) (holding no probable cause to arrest defendant for unlawful carrying of weapon when no evidence that "tire buddy," which checked tire pressure, was specially designed, made, or adapted to inflict serious bodily

6

injury or death); *Coleman v. State*, 790 S.W.2d 369, 370–71 (Tex. App.—Dallas 1990, no pet.) (holding evidence insufficient to show instrument was club under section 46.02 where evidence only showed that wooden, 18-inch cylinder with "Tire Knocker" printed on side was designed and used to determine if truck tires have correct air pressure); *Heerema v. State*, 786 S.W.2d 532, 533 (Tex. App.—Dallas 1990, no pet.) (holding because no evidence that instrument—which was rounded on one end and rough cut on the other—was adapted for use as a club, evidence insufficient to show instrument was club under section 46.02); *Adkins v. State*, No. 02-01-00288-CR, 2003 WL 1524138, at *6–7 (Tex. App.—Fort Worth 2003, pet. ref'd) (op. on PDR, not designated for publication) (holding evidence that 18-inch stick covered in animal bite marks was only used to train and play with defendant's dogs insufficient to qualify as club under section 46.02). Therefore, we hold that the evidence is sufficient to show that the collapsible baton was a club as statutorily defined, and we overrule Spring's fourth issue.

## IV. UNPRESERVED ISSUES

### A. Extraneous-Offense Evidence at Punishment

In his first issue, Spring argues that the trial court erred by admitting extraneous-offense evidence at punishment because the State's notice was late

and, thus, unreasonable.[5]   Specifically, Spring points to the admission of testimony about the November 1, 2010 unauthorized-use-of-a-motor-vehicle conviction.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Clay v. State*, 361 S.W.3d 762, 765 (Tex. App.—Fort Worth 2012, no pet.).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.  Tex. R. App. P. 33.1(a)(2); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011).  A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g); *Clay*, 361 S.W.3d at 765.

We note that Spring objected to the unreasonableness of the State's amended notice of intent based on "the additional 17 points" that were added in the amended notice of intent.  But Spring raised no objection to the lateness of

---

[5]Although Spring states that the trial court also erred by admitting such evidence at guilt-innocence, he only points to evidence adduced during punishment.  Therefore, we will review this issue under article 37.07 and not rule 404(b).  *See Patton v. State*, 25 S.W.3d 387, 392 (Tex. App.—Austin 2000, pet. ref'd).

8

the notice regarding the unauthorized-use-of-a-motor-vehicle charge, which had been included in the original notice and, therefore, was not one of "the additional 17 points." At no point did Spring bring to the trial court's attention that the amended notice of intent gave unreasonable notice of the 2010 charge of unauthorized use of a motor vehicle. *See* Tex. R. App. P. 33.1(a)(1). Spring has therefore forfeited this complaint. We overrule Spring's first issue.

## B. *Brady* Evidence

In his second issue, Spring argues that the State violated its obligation to provide exculpatory evidence to him before trial because, although specifically requested by Spring, the State did not produce employment records for Irons to show that she was employed at J Bar. The State contends that Appellant forfeited his *Brady* claim because he did not request that Calvert produce the employment records during her testimony.[6] We agree. Spring's complete failure to raise this issue in the trial court forfeits his complaint. *See id.*; *Keeter v. State*, 175 S.W.3d 756, 760–61 (Tex. Crim. App.), *cert. denied*, 546 U.S. 582 (2005).

Further, Appellant has failed to show a *Brady* violation. The State violates due process if it fails to disclose evidence in its possession favorable to the accused if the evidence is material either to guilt or to punishment. *Brady v.*

---

[6]We note that before closing arguments at guilt-innocence began, Appellant stated that he intended to call Calvert at punishment to produce Irons's employment records pursuant to his subpoena. Appellant did not attempt to call Calvert as a witness at punishment or otherwise introduce the employment records.

*Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963); *see Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Spring does not argue (and there is nothing in the record to show) that the State had Irons's employment records in its possession. *See Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990) ("*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession."); *Harwood v. State*, 961 S.W.2d 531, 545 (Tex. App.—San Antonio 1997, no pet.) ("The State is not obligated to produce evidence of which it has no knowledge, and [Appellant] has not demonstrated that the State knew about or ever possessed the tapes."). Moreover, as the State points out, Calvert and Densmore testified that Irons was employed as a waitress at J Bar, and there is no evidence to the contrary. This is fatal to Appellant's *Brady* claim. We overrule Spring's second issue.

### C.    Speedy Trial

In his third issue, Spring argues that his Sixth Amendment right to a speedy trial was violated because his trial occurred nearly two years after his arrest. The State responds that Spring forfeited this issue because he raises it for the first time on appeal.

A defendant forfeits his speedy-trial claim when he does not raise the claim before the trial court and, instead, raises the argument for the first time on appeal. *See Dunn v. State*, 819 S.W.2d 510, 526 (Tex. Crim. App. 1991), *cert. denied*, 506 U.S. 834 (1992); *Mulder v. State*, 707 S.W.2d 908, 915 (Tex. Crim.

10

App. 1986); *Henson v. State*, 388 S.W.3d 762, 770–72 (Tex. App.—Houston [1st Dist.] 2012, pet. granted); *cf. Orand v. State*, 254 S.W.3d 560, 567–69 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding speedy-trial claim not wholly forfeited where defendant raised issue in the trial court by timely filing post-judgment motion in arrest of judgment and motion to dismiss indictment). Spring did not bring to the trial court's attention that he believed his constitutional right to a speedy trial had been violated. He therefore forfeited this issue. We overrule Spring's third issue.

## V. CONCLUSION

Having overruled all of Spring's issues, we affirm the trial court's judgment.


BILL MEIER
JUSTICE

PANEL: GARDNER, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 13, 2013