

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-06-388-CR

GERALD LYNN BRADLEY                                          APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Gerald Lynn Bradley appeals his convictions on two counts of aggravated sexual assault of a child under the age of fourteen and two counts of indecency with a child. We modify the judgment and affirm it as modified.

### Background

The complainant in this case is K.G., who was twelve or thirteen years old at the time of the alleged offenses and sixteen at the time of trial.

---

[1] *See* TEX. R. APP. P. 47.4.

Appellant is K.G.'s paternal step-grandfather. K.G. testified that on two occasions when she spent the night at Appellant's home, Appellant gave her alcohol to drink and later—while she was trying to sleep—sexually assaulted her. K.G. eventually made an outcry to her cousin and her aunt.

The grand jury indicted Appellant for one count of aggravated sexual assault and one count of indecency with a child by sexual contact arising from the first incident (counts one and two) and one count of aggravated sexual assault and two counts of indecency with a child by sexual contact arising from the second incident (counts three, four, and five). The trial court submitted counts one through four to the jury. The jury found Appellant guilty on each of the four counts and assessed punishment at thirty years' confinement on each of counts one and two and sixty years' confinement on each of counts three and four. The trial court sentenced Appellant accordingly, and this appeal followed.

**Extraneous offense evidence**

In his first point, Appellant argues that the trial court abused its discretion by admitting K.G.'s testimony that Appellant gave her alcoholic beverages because the State failed to give him notice of its intent to offer that evidence until the day of trial. The State replies that the trial court properly admitted the evidence as same transaction contextual evidence.

2

We review the admission of evidence under an abuse of discretion standard. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court abuses its discretion if its ruling is outside the zone of reasonable disagreement. *Id.*

Generally, evidence of other crimes, wrongs, or bad acts is not admissible during the guilt-innocence phase of the trial:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX. R. EVID. 404(b). Article 38.37 of the code of criminal procedure provides that notwithstanding rule 404(b), evidence of other crimes committed by the defendant against a child-victim in a sexual assault case is admissible to show the state of mind of the defendant and the child and the previous and subsequent relationship between them, provided that upon request by the defendant, the State give the defendant notice of its intent to introduce such evidence in the same manner as the State is required to give notice under rule 404(b). TEX. CODE CRIM. PROC. ANN. art. 38.37 §2, 3 (Vernon Supp.2007).

3

"Rule 404(b) literally conditions admissibility of other-crimes evidence on the State's compliance with the notice provisions of Rule 404(b)." *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005). But in the absence of notice, "same transaction contextual evidence" may be admissible where several crimes are intermixed, blended with one another, or connected so that they form an indivisible criminal transaction. *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000). An offense is not tried in a vacuum, and the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense. *Id.* An extraneous offense occurs in the same transaction as another offense and is, thus, admissible when the offenses are "so intermixed or connected as to form a single, indivisible criminal transaction, such that in narrating the one, it is impracticable to avoid describing the other." *McDonald v. State*, 179 S.W.3d 571, 577 (Tex. Crim. App. 2005) (quoting *Rogers v. State*, 853 S.W.2d 29, 33–34 (Tex. Crim. App. 1993)). Same transaction contextual evidence is admissible "only to the extent that it is necessary to the jury's understanding of the offense," that is, "only when the offense would make little or no sense without also bringing in the same transaction evidence." *Id.* (quoting *Wyatt*, 23 S.W.3d at 25).

Eighteen months before trial, Appellant served the State with a request for notice of the State's intent to offer evidence of extraneous bad acts under

4

articles 37.07 and 38.37 of the code of criminal procedure and rules of evidence 404(b) and 609(f). *See* TEX. R. EVID. 404(b), 609(f); TEX. CODE CRIM. PROC. ANN. arts. 37.07, 38.37 (Vernon Supp. 2007). Nineteen days before trial, the State served Appellant with notice of its intent to offer evidence concerning extraneous offenses—robbery, theft, and injury to a child—that Appellant had allegedly committed in 1971, 1979, and 1986. But it did not notify Appellant of its intent to offer K.G.'s testimony that Appellant gave her alcoholic beverages until the day of trial. The prosecutor stated that he had not learned about the alcoholic beverages until the day before trial. Appellant objected to the lack of timely notice under rule 404(b) and to the evidence's relevance. Appellant also moved for a continuance to allow time to investigate the alcoholic beverage allegation. The trial court overruled his objections and denied his request for a continuance.

K.G. testified that when she spent the night at Appellant's house, she usually did so with several of her cousins. She and her cousins slept in a finished structure in Appellant's back yard called the "shed." K.G. testified that on the night of the first alleged assault, she slept in the shed with three of her cousins. She said that Appellant and his wife had provided alcohol to her and one of her cousins and that she had consumed three "Smirnoff Ice Triple Black" beverages and some beer. K.G. testified that she fell asleep while watching a

5

movie and awoke when she felt Appellant moving his finger inside her vagina. She said that on the night of the second alleged assault, Appellant and his wife had again given alcohol to her and one of her cousins. K.G. testified that she fell asleep in the shed and awoke when Appellant nudged her with his foot. She said that Appellant touched her buttocks and her genitals and put his fingers inside her vagina. K.G. testified that Appellant stopped the assault when she began to move.

In this case, Appellant's extraneous offenses of providing alcohol to K.G. were so intertwined with the sexual assaults that the jury's understanding of the sexual assaults would have been obscured without them. *See McDonald*, 179 S.W.3d at 577; *Wyatt*, 23 S.W.3d at 25–26; *Rogers*, 853 S.W.2d at 33–34; *see also Heiman v. State*, 923 S.W.2d 622, 626 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (holding evidence that defendant injected cocaine into himself and victim at time of offense of indecency with child constituted same transaction contextual evidence). We therefore hold that Appellant's provision of alcohol to K.G. in the hours leading up to the sexual assaults was same transaction contextual evidence and that the trial court did not abuse its discretion by admitting the evidence over Appellant's lack-of-notice objection. We overrule Appellant's first point.

In his sixth point, Appellant argues that the trial court abused its discretion by allowing the State to cross-examine his wife, Pam Bradley, about an extraneous offense—causing bodily injury to Bradley and a child—that Appellant had allegedly committed twenty years before trial. On cross-examination, Bradley volunteered that she would not lie for Appellant. The prosecutor then asked whether she had ever tried to get Appellant out of trouble before, and she answered no. The prosecutor requested a bench conference and explained to the trial court that he wanted to ask Bradley about phone calls she made to another prosecutor in 1986 in an attempt to have charges then pending against Appellant dropped. Appellant objected on the basis of rules 401 and 404(b), among other objections;[2] the trial court overruled his objections but allowed Appellant to make a running objection to the extraneous offense testimony. The following colloquy then transpired between the prosecutor and Bradley:

> Q. (By [Prosecutor]) Your last statement to me, you said that you've never tried to get [Appellant], your husband, out of trouble, but I would like to specifically bring your attention to September the 12th of 1986, October the 2nd of 1986 and October the 17th of 1986. These were all dates in which you attempted to call and talk to a prosecutor named Brent Carr, 20

---

[2] Appellant did not object on the basis of rule 608, which forbids the use of specific instances of a witness's conduct to attack or support the witness's credibility. *See* TEX. R. EVID. 608(b).

years ago, to try to get him to drop charges or to get your husband out of trouble at the time.  Is that, in fact, true?

A.  No, that's not true.  I never called Brent Carr.

Q.  Or Detective Houck?

A.  I don't know who that is.

Q.  Would it surprise you that Brent Carr remembers who you are?

A.  Yes, it would.

[DEFENSE COUNSEL]:  Your Honor, I'm going to object to that, assumes facts not in evidence.

THE COURT:  That's sustained.

Q.  (By [Prosecutor])  Do you remember a Detective Houck?

A.  No, I do not.

Q.  And do you remember making any phone calls to try to get [Appellant] out of trouble back in 1986/'87?

A.  Why would I want to get him out of trouble, if he didn't do anything to me?  I mean, what are you talking about?

[PROSECUTOR]:  May we approach again, Judge?

THE COURT:  Yes.  Ma'am, don't say anything else.

(Bench conference on the record and out of the hearing of the jury.)

[PROSECUTOR]:  I wasn't even planning on going that far, Judge.  Can I just ask -- without even saying who did what, can I say, Do you recognize this?

8

[DEFENSE COUNSEL]: I guess, for the record, the DA is showing the Judge photographs of the witness and --

[PROSECUTOR]: Well, do you want to get her to just mark them?

THE COURT: Yeah, you better mark them.

(State's Exhibit Nos. 7 through 12 were marked.)

[PROSECUTOR]: You know, at this point, Your Honor, I think for safety's sake while I go into this line of questioning, I'd feel probably better if we went outside the presence of the jury when I go into this questioning. I mean, I'm willing to go forward like this, as is, but, Judge --

THE COURT: Why would you want to go outside the presence? You brought up to it, all you've got to ask her if they did it or not.

[PROSECUTOR]: Okay.

[DEFENSE COUNSEL]: And, Your Honor, again, we'd object to this line of questioning, the same objection 404(b), 403 and 401, Montgomery objection. It's about an extraneous offense 20 years ago. It's not relative and it's not probative and the probative value is substantially outweighed by unfair prejudice --

THE REPORTER: Slow down.

[DEFENSE COUNSEL]: Any probative value would be outweighed by unfair prejudice, Your Honor.

THE COURT: All right. That's overruled.

[PROSECUTOR]: And for the record, Your Honor -- for the record only, I'm going to offer State's Exhibit Nos. 7, 8, 9, 11 and 12 for the record only.

9

THE COURT:  Just 8 and 9, what about 10?

[PROSECUTOR]:  Well, it's only got some hair in there.  It's not a very good picture.

THE COURT:  So 8, 9, 11 and 12 for the record?

[PROSECUTOR]:  Yes.

THE COURT:  All right.  Any objections for the record?

[DEFENSE COUNSEL]:  Just -- no, not for the record.

THE COURT:  All right.  They are admitted.

(Bench conference ends.)

THE COURT:  Okay.

Q.  [PROSECUTOR]:  Ms. Bradley --

A.  Uh-huh.

Q.  -- I'm going to show you what's been marked previously as State's Exhibit Nos. 8 and 11, as well as 7, 9 and 12.  If you would take a look at those photographs, do you --

A.  Yes, I know what happened.

Q.  And can you -- the subject matter of these photographs, what time period are we talking about?

A.  Well, 29 -- 21 years ago.

Q.  Back in '86?

A.  I guess.

Q. Are these photographs time stamped? I mean, you don't have to say what's specifically on them, but if that refreshes your memory?

A. '86 is correct.

Q. And do you recognize, are you depicted in these photographs?

A. Yes.

Q. Is that, in fact, you?

A. Yes.

Q. Okay. And --

A. The first time I've seen them. This is the first time I've seen them.

Q. It is?

A. Yes, it is.

Q. Is it the first time you've actually seen what they depict or do you think they have been altered or do you think they are accurate depictions about --

A. Well, I'm just saying this is the first time I've ever seen them, because this never went anywhere.

Q. And could that be because you didn't want it to go anywhere?

A. I didn't do nothing -- anything.

Q. Were you avoiding people trying to get ahold of you?

A. No.

11

Q. And were you making phone calls trying to get everything taken care of?

A. No, I never did.

Q. And you don't remember Brent Carr?

A. I remember Brent Carr.

Q. Oh, you do?

A. Yes, but I never talked to him, as far as calling him. I never had to call him on the phone.

Q. Well, earlier you said you didn't remember who he was?

A. I said I do remember Brent Carr, but you said did I ever call him and I said, I never called him.

Q. Okay. So you do remember Brent Carr?

A. Yes, I do.

Q. And did -- you never talked to Brent Carr?

A. Yes, I did.

Q. You did talk to him?

A. But I never called him, like you said.

Q. Did he call you?

A. On the phone, no. I went down to the office to talk to him.

Q. Okay. So you -- you talked to Brent Carr, and did you try to tell Brent Carr -- were you trying to get [Appellant] out of trouble at that time with the conversation with Brent Carr?

12

A.   No, I did not try to get him out of trouble.  It went -- it went to the -- he pleaded nothing and got nothing, got probation.

Appellant argues that the trial court abused its discretion by allowing the prosecutor to pursue the foregoing line of questions because the testimony was irrelevant and unduly prejudicial and because it was character conformity evidence.  The State argues that the testimony was admissible to correct a false impression concerning Appellant's wife's credibility.

When a witness leaves a false impression concerning a matter relating to his or her credibility, the opposing party may attempt to correct that false impression on cross-examination.  *Ramirez v. State*, 802 S.W.2d 674, 676 (Tex. Crim. App. 1990).  On the other hand, evidence of extraneous offenses is not admissible at the guilt-innocence phase of trial to prove that a defendant acted in conformity with his character by committing the charged offense, but it may be admissible for other purposes, such as proof of motive, opportunity, and intent.  TEX. R. EVID. 404(b).  The list of other purposes identified in rule 404(b) is not exclusive.  *Rogers*, 853 S.W.2d at 33.

In this case, the State attempted to correct an allegedly false impression regarding Bradley's credibility—namely, her volunteered statement that she would not lie for Appellant and her negative answer to the question of whether she had tried to get him out of trouble before—by cross-examining her about

13

her contacts with a prosecutor regarding unspecified charges against her husband in an attempt to "get him out of trouble" twenty years ago. The State notes, and we agree, that Bradley, herself—not the State—injected specifics about the nature and resolution of the twenty-year-old charges when she said, "Why would I want to get him out of trouble, *if he didn't do anything to me*?" and that Appellant "got probation" in nonresponsive answers to the prosecutor's questions. [Emphasis added.] We therefore hold that the trial court did not abuse its discretion by allowing the State to pursue the line of questioning over Appellant's objection, and we overrule his sixth issue.

**Double jeopardy**

In his second and third points, Appellant argues that his convictions on counts two and four—the indecency counts—violate the double jeopardy clause because the conduct made the basis of those counts was the same conduct made the basis of his convictions on counts one and three—the sexual assault counts. The State concedes the merit of these two points and asks us to modify the judgment and vacate the indecency convictions. We therefore sustain Appellant's second and third points. Because we have sustained Appellant's second point, we need not consider his fifth point, in which he argues that the trial court erred by instructing the jury to consider whether

14

Appellant committed the offense alleged in count two on a date after the indictment was returned. *See* TEX. R. APP. P. 47.1.

**Improper argument**

In his fourth point, Appellant argues that the trial court erred by allowing the State to appeal to community expectations during closing argument. The prosecutor argued as follows:

> This case is not about [Appellant's wife]. It's not about [other family members]. This case is about [Appellant].
>
> And in fact, it's not really about [K.G.]. It's about [Appellant] and what he did to [K.G.] and what we're going to do about it as a community. We have to come together, and we don't allow children to be abused in our community.

Appellant objected to the foregoing as improper argument based on community expectations, and the trial court overruled the objection.

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

A proper plea for law enforcement may take many forms, one of which is to argue the relationship between the jury's verdict and the deterrence of

15

crime in general. *Borjan v. State*, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990).

A prosecutor may argue that juries should deter specific crimes by their verdict.

*Id.* The State may also argue the impact of the jury's verdict on the

community. *Id.* The State may not, however, argue that the community or any

particular segment of the community expects or demands either a guilty verdict

or a particular punishment. *Id.* A prosecutor does not necessarily make an

improper appeal to the community's desires just by referring to the community

during argument. *York v. State*, — S.W.3d — , No. 10-07-00180-CR, 2008 WL

2210023, at *5 (Tex. App.—Waco May 28, 2008, no pet. h.); *Rivera v. State*,

82 S.W.3d 64, 69 (Tex. App.—San Antonio 2002, pet. ref'd).

We cannot say that the prosecutor's argument was an attempt to induce

the jury to convict Appellant because the community desired or expected a

conviction. The prosecutor's statement that the community will not tolerate

child abuse was a proper plea for law enforcement; in essence, the prosecutor

asked the jury to deter specific crimes by their verdict. *See Borjan*, 787 S.W.2d

at 56; *see also Goocher v. State*, 633 S.W.2d 860, 864 (Tex. Crim. App.

[Panel Op.] 1982) (holding prosecutor's argument— "I am asking you to enforce

it. I'm asking you to do what needs to be done to send these type of people a

message to tell them we're not tolerating this type of behavior in our

16

county"—was a permissible plea for law enforcement).  We therefore overrule Appellant's fourth point.

### Conclusion

Having overruled Appellant's first, fourth, and sixth points, having sustained his second and third points, and not having reached his fifth point, we modify the trial court's judgment by vacating Appellant's convictions and sentences for indecency with a child by contact as alleged in counts two and four of the indictment.  We affirm the trial court's judgment as modified.


ANNE GARDNER
JUSTICE

PANEL B:   GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED:  July 17, 2008