



# MEMORANDUM OPINION

No. 04-10-00003-CR

Luis Martin **GONZALEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2009-CRN-000227-D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:     Marialyn Barnard, Justice

Sitting:         Rebecca Simmons, Justice
                 Steven C. Hilbig, Justice
                 Marialyn Barnard, Justice

Delivered and Filed:  December 8, 2010

AFFIRMED

A jury found appellant Luis Martin Gonzalez guilty of murder, and sentenced him to ninety-nine years confinement in the Texas Department of Criminal Justice-Institutional Division.  On appeal, Gonzalez contends he received ineffective assistance of counsel, the trial court erred in allowing improper jury argument by the State, and the trial court erred in allowing the motion for new trial hearing to proceed in his absence.  We affirm the trial court's judgment.

**BACKGROUND**

Gonzalez and Jose Alberto Melecio were neighbors and friends for approximately two years. The record shows that on the evening of September 6, 2008, Gonzalez and Melecio were drinking alcohol and using cocaine at a house owned by Gonzalez's grandmother. Over the course of the evening, an argument ensued between Gonzalez and Melecio over the lack of cocaine, which escalated to a physical confrontation that led to Melecio's death.

In the early morning of September 7, 2008, Officer Juan Gilberto Perez of the Laredo Police Department was dispatched to investigate a welfare concern reported by Gonzalez's aunt, Sylvia Rojas. She asked police to check on Gonzalez. When Officer Perez arrived at the house owned by Gonzalez's grandmother, he knocked and Gonzalez peeked through a broken window. Initially, Gonzalez did not want Officer Perez to enter the house. Rojas, who was also at the house, approached Gonzalez and noticed he was covered in dried blood. She advised Officer Perez about the blood. When Officer Perez asked Gonzalez if anyone else was with him, Gonzalez admitted there was another person in the house, but he stated he was dead. Officer Perez then entered the house, noticed the place was covered in blood and found Melecio lying on the bathroom floor. Gonzalez was arrested and charged with murder. He was taken to the Laredo Police Department.

Sergeant Carlos Adan, the lead homicide investigator, interviewed Gonzalez. Gonzalez told Sergeant Adan that Melecio was assaulted by three individuals while Gonzalez hid underneath the bed. Gonzalez denied killing Melecio. Gonzalez also told Sergeant Adan he had been on an alcohol and cocaine binge for several days prior to the murder.

At trial, Gonzalez testified he and Melecio consumed alcohol and cocaine on the night of the murder. Gonzalez also stated he and Melecio argued over the lack of cocaine. Contrary to

what he told Sergeant Adan, Gonzalez testified Melecio attacked him and he fought back. Gonzalez admitted striking Melecio several times with his hands, with a candle, and with a mop handle, but stated it was never with the intention of killing Melecio.

Dr. Corrine E. Stern of the Webb County medical examiner's office conducted Melecio's autopsy. She testified Melecio suffered "defensive-type" wounds to his forearm and the back of his hands. Dr. Stern testified Melecio suffered multiple injuries and died from blunt force injuries to the head.

Based on the foregoing evidence, the jury found Gonzalez guilty of Melecio's murder. Gonzalez then perfected this appeal.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Gonzalez first contends he received ineffective assistance of counsel when his trial attorney failed to investigate, question, or present: (1) material witnesses, and (2) evidence of Gonzalez's mental illness.

To prevail on an ineffective assistance of counsel claim, an appellant must show: (1) deficient performance by trial counsel, and (2) prejudice arising from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Garza v. State*, 213 S.W.3d 338, 347 (Tex. Crim. App. 2007). To establish counsel's performance was deficient, an appellant must prove by a preponderance of evidence that his counsel's representation fell below an objective standard of professional norms. *Strickland*, 466 U.S. at 688; *Garza*, 213 S.W.3d at 347–48. To establish the defense was prejudiced, an appellant must show there is a reasonable probability that but for trial counsel's errors, the outcome of the trial would have been different. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Ruiz v. State*, 293 S.W.3d 685, 690 (Tex. App. San Antonio 2009, pet. ref'd).

We must presume trial counsel provided effective assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). There is a strong presumption that trial counsel's decisions and actions were motivated by sound trial strategy. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). To overcome this presumption, counsel's ineffectiveness must be "firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App.1999). Even so, rarely will a reviewing court be able to make a determination in an ineffective assistance of counsel claim on direct appeal because the record is generally undeveloped. *Id.* Thus, a substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. *Id.* at 813–14.

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Trial counsel's performance will be deemed sufficient if any strategy can be ascribed to his actions or decisions, and his performance will be found deficient only if "the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

Gonzalez first contends he received ineffective assistance of counsel because his trial counsel failed to investigate, question, or present witnesses material to his defense. Specifically, Gonzalez claims his trial counsel failed to present witnesses who would testify Melecio was the aggressor and Gonzalez acted in self-defense. This assertion is not supported by the record. Trial counsel testified at the motion for new trial hearing that he conducted his own investigation in search of witnesses who would testify about Melecio's alleged aggressive character in order to support Gonzalez's self-defense claim. However, trial counsel was unable to find such

witnesses. Counsel testified as to one specific allegation he investigated–that Melecio was involved in an altercation with a police officer, Sergeant Gomez, ten years before the murder. This allegation, however, could not be substantiated. In fact, at the motion for new trial hearing, Sergeant Gomez testified he vaguely remembered the incident, recalling he was pushed by a subject during a criminal mischief investigation. However, Sergeant Gomez could not remember whether Melecio had been the aggressor.

Based on the evidence from the hearing on the motion for new trial, as well as the trial record, we hold Gonzalez failed to prove his trial counsel was ineffective. *See Thompson*, 9 S.W.3d at 814. Rather, the record shows trial counsel conducted an investigation, but was unable to find any witnesses who could testify to Melecio's alleged aggressive behavior.

Gonzalez also argues trial counsel failed to investigate Melecio's assaults on his wife. There is no evidence in the record suggesting the assaults ever occurred. Trial counsel's investigation revealed that, other than the isolated incident with Sergeant Gomez, Melecio had no pattern or reputation for being aggressive. Thus, trial counsel's performance was not outside objective professional norms, *see Garza*, 213 S.W.3d at 347–48, and was not so outrageous that a competent attorney would not have made the same decision. *See Andrews*, 159 S.W.3d at 101.

Gonzalez also asserts his trial counsel failed to investigate, question, or present mitigating witnesses. Gonzalez argues trial counsel erred in not calling several lay witnesses to testify about Gonzalez's good character. However, trial counsel testified in the motion for new trial hearing that he chose not to use these character witnesses because he did not want to make reputation and character traits an issue during trial. Accordingly, trial counsel's actions can be ascribed to a specific trial strategy. *See id.* Gonzalez has therefore failed to overcome the strong presumption that counsel's conduct fell within a wide range of reasonable representation, *see*

*Salinas*, 163 S.W.3d at 740, and we hold the record does not affirmatively demonstrate the alleged ineffectiveness. *See Thompson*, 9 S.W.3d at 814.

Gonzalez next argues he received ineffective assistance of counsel because his trial counsel failed to investigate, question, or present evidence of Gonzalez's mental illness. At the motion for new trial hearing, trial counsel testified he did investigate Gonzalez's prior mental health history, but decided not to raise any mental health issues in trial because he was worried Gonzalez "would be portrayed as a walking time bomb capable of going off any time and killing somebody."

At the same hearing, Dr. Homero Sanchez, a licensed psychiatrist who previously examined Gonzalez, testified Gonzalez had pathological reactions such as getting into fights while drinking. Production of this mental health evidence would have been prejudicial to Gonzalez's self-defense claim, as it would support the State's argument that Gonzalez's aggression was triggered by his dependence on cocaine and alcohol. Thus, the decision not to present the alleged mental health evidence can be ascribed to trial strategy. *See Andrews*, 159 S.W.3d 101.

Gonzalez argues trial counsel failed to investigate previous evidence of Gonzalez's mental state or seek an independent psychiatric evaluation. We find no evidence in the record to suggest Gonzalez suffered from insanity, incompetence, or any other mental health issue that would warrant an independent psychiatric evaluation. As noted above, the only evidence was that Gonzalez was perhaps a "time bomb," and that Gonzalez's use of controlled substances triggered violence. Both Dr. Sanchez and Dr. Orlando Rodriguez, a qualified psychiatrist testifying for Gonzalez, stated Gonzalez knew the difference between right and wrong. Therefore, we again find trial counsel's performance can be ascribed to a trial strategy. *See*

*Andrews*, 159 S.W.3d at 101. There simply was no evidence suggesting Gonzalez suffered from insanity or incompetence.

Finally, Gonzalez contends his trial counsel failed to introduce medical testimony as a mitigating factor. It was within Gonzalez's counsel's discretion to decide what evidence to present at trial. *See Bone v. State*, 77 S.W.3d 828, 834–35 (Tex. Crim. App. 2002). Given the evidence presented at the hearing on the motion for new trial, we hold Gonzalez's counsel's performance was not "so outrageous that no competent attorney would have engaged in it" because his actions represent a trial strategy. *See Andrews*, 159 S.W.3d at 101.

Even if trial counsel was ineffective for any of the reasons asserted by Gonzalez, we hold he has failed to establish his defense suffered any prejudice as a result of counsel's alleged failures, i.e., that there is a reasonable probability that but for the alleged error, the outcome of the trial would have been different. *See Strickland*, 466 U.S. at 688; *Mitchell*, 69 S.W.3d at 642; *Ruiz*, 293 S.W.3d at 690. When reviewing an ineffective assistance claim, "[a]n appellate court looks to the totality of the representation and the particular circumstances of each case." *Thompson*, 9 S.W.3d at 813. In this case, there was extensive testimony to prove Gonzalez assaulted Melecio and caused his death, justifying the conviction. Because Gonzalez failed to establish his trial counsel's performance was deficient and failed to establish prejudice to his defense, his claim of ineffective assistance of counsel must be overruled. *See Strickland*, 466 U.S. at 688; *Garza*, 213 S.W.3d at 347.

### IMPROPER JURY ARGUMENT

Gonzalez also contends the trial court erred in allowing the State to make an improper jury argument. We first address whether Gonzalez properly preserved the issue for our review.

To preserve error for appellate review with regard to an improper jury argument, a timely and specific objection must be made, and the complaining party must have obtained an adverse ruling from the trial court. *Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); TEX. R. APP. P. 33.1(a); *see also Hernandez v. State*, 171 S.W.3d 347, 358 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (explaining that objection must be specific enough to alert trial court of legal basis for objection). Gonzalez argues the State made an improper jury argument during the guilt/innocence phase of the trial when it asked the jury to send a message to the community of Laredo. Gonzalez specifically points to the State asking the jury to send a message that "Laredo is not going to tolerate this." Gonzalez's counsel objected stating, "I'm going to object insofar that he's asking the jury to make an example of my client." This objection is not a specific legal objection. *See Turner*, 805 S.W.2d at 431 (requiring specific objection to preserve error for appellate review). Moreover, Gonzalez failed to obtain the required adverse ruling from the trial court on his objection. *See Lovill*, 319 S.W.3d at 691; *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2005) (en banc); *Bishop v. State*, 308 S.W.3d 14, 18 (Tex. App.—San Antonio 2009, pet. ref'd). Thus, we hold Gonzalez waived his right to raise the improper jury argument claim on appeal.

Even if the issue was preserved for appeal, we hold the State's argument does not constitute improper jury argument. A plea for law enforcement is one of the general areas of proper jury argument. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); *Lemon v. State*, 298 S.W.3d 705, 707 (Tex. App.—San Antonio 2009, pet. ref'd). And, remarks made during jury argument must be considered in context. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988); *Rivera v. State*, 82 S.W.3d 64, 68 (Tex. App.—San Antonio 2002, pet. ref'd).

Although the State may not refer directly to the demands or expectation of the community for a particular verdict, simply mentioning the community is not necessarily improper during jury argument. *Borjan v. State*, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990) (noting State may argue impact of jury's verdict on community); *Harris v. State*, 122 S.W.3d 871, 888 (Tex. App.—Fort Worth 2003, pet. ref'd) (stating that mere reference to "the community" does not constitute improper appeal to community expectations. Moreover, the State is entitled to remind the jury that it is representative of the community and request the jury send a message. *Hawkins v. State*, 278 S.W.3d 396, 404–05 (Tex. App.—Eastland 2008, no pet.) (holding that argument asking jury "to send these type of people a message to tell them we're not tolerating this type of behavior in our county" was proper plea for law enforcement); *Wilson v. State*, 179 S.W.3d 240, 247 (Tex. App.—Texarkana 2005, no pet.) (holding that it is proper argument for State to ask jury to send message that community will not tolerate violence). The State may also argue the relationship between the jury's verdict and the deterrence of crime and the impact of the jury's verdict on the community. *Borjan*, 787 S.W.2d at 56; *Rivera*, 82 S.W.3d at 69 (referring to argument requesting jury to send message that behavior in question will not be tolerated in community as proper argument).

Accordingly, we hold the statement Gonzalez complains of is a proper plea for law enforcement. The State's argument focused on the jury as a representative of the Laredo community and the deterrence of crime. The State did not ask the jury to return a verdict of guilt because the community expected it. *See Borjan*, 787 S.W.2d at 56. Rather, the State asked the jury to represent the community and send a message, which is proper jury argument. *See Hawkins*, 278 S.W.3d at 404–05; *Wilson*, 179 S.W.3d at 247. We therefore overrule Gonzalez's complaint regarding improper jury argument.

## MOTION FOR NEW TRIAL HEARING

Finally, Gonzalez argues the trial court erred in allowing the motion for new trial hearing to proceed in his absence. A defendant has a statutory right to appear in trial, and this right extends to a hearing on a motion for new trial. TEXAS CODE CRIM. PROC. ANN. art. 33.03 (West 2006); *Phillips v. State*, 288 S.W.2d 775, 776 (Tex. Crim. App. 1956). However, in this case, the record reflects no objection was made to Gonzalez's absence from the hearing. To the contrary, the record reflects that Gonzalez's trial counsel was present, acknowledged Gonzalez's absence, yet affirmatively announced ready to proceed without him.

We recognize that prior to the hearing trial counsel asked to have Gonzalez present at the hearing, and that the request was not processed. Gonzalez argues the hearing proceeded out of necessity because the following day the court would have lost its plenary power. *See* TEX. R. APP. P. 21.8 (stating trial court must rule on defendant's motion for new trial within seventy-five days after imposing sentence). We agree the trial court would have lost plenary power of the matter the next day. *See id.* Nevertheless, trial counsel made no effort to request a reset for the next day, insist his client be present, or object to having the hearing in Gonzalez's absence. Instead, trial counsel, who we presume was aware of the time limitations relevant to a trial court's plenary power, affirmatively requested to proceed with the hearing in Gonzalez's absence:

> Based on all the knowledge and communication with the family, we are ready to proceed without him because there are some important matters that we need to establish for the record.

Trial counsel's failure to object to Gonzalez's absence at the motion for new trial hearing and his request to proceed constitute an affirmative waiver of this issue on appeal. *See Lacy v. State*, 374 S.W.2d 244, 245 (Tex. Crim. App. 1964) (denying appellant's contention that trial

court erred in having hearing on motion for new trial in his absence when trial counsel was present, announced ready, and made no objection to his absence from the hearing); *see also Gates v. State*, 332 S.W.2d 333. 334 (Tex. Crim. App. 1960) (holding judgment of conviction was not void when defendant was not present when his motion for new trial was overruled because motion would have been overruled by operation of law if the court had not acted on it); *see also Dean v. State*, 749 S.W.2d 80, 83 (Tex. Crim. App. 1988) (noting statement of no objection constitutes an affirmative waiver of issue on appeal). Accordingly, we overrule Gonzalez's last issue.

## CONCLUSION

In sum, we overrule Gonzalez's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish