TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00238-CR

NO. 03-11-00473-CR

NO. 03-11-00474-CR

NO. 03-11-00525-CR






Elridge Vanderhorst Hills, Jr., Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT

NOS. 67020 & 67021, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 Appellant Elridge Vanderhorst Hills, Jr., was charged with harassing Jimmy Evans
and Alexander Cruz-Nazario, officers at the Bell County Jail (the jail) where Hills was an inmate
at the time. See Tex. Penal Code Ann. § 22.01 (West 2011). Following a bench trial in which Hills
represented himself but was appointed standby counsel, the district court convicted Hills of the
charged offenses and sentenced him to fourteen years' imprisonment. (1) In three issues on appeal,
Hills, who is proceeding pro se, asserts that the State withheld exculpatory evidence in violation of
Brady v. Maryland, 373 U.S. 83 (1963); that the district court "furthered" the alleged Brady violation
by quashing what Hills characterizes as a subpoena duces tecum; and that standby counsel provided
ineffective assistance by "partaking" in the alleged Brady violation. (2) We will affirm the judgments
of conviction. (3)


BACKGROUND

 The district court heard evidence that on September 5, 2010, Evans, a shift supervisor
in the jail, was escorting Hills to the jail's "multipurpose room," which, in addition to being used
for general recreational and assembly purposes, also contains a law library. Evans testified that when
they arrived at the entrance to the room, Hills requested to make copies of certain documents but
Evans refused the request. As a result, Hills became "agitated" and refused to enter the room despite
Evans ordering him to do so. According to Evans, during the ensuing confrontation, Hills told him,
"I ought to just spit in your face." Evans explained that Hills then "hocked up" his saliva and spit in
Evans's face and nose. Shortly thereafter, other officers arrived and restrained Hills. Evans further
testified that as he and other officers were taking Hills back to his cell, Hills stated, "I'll do it again.
They never did anything to me about your case. (4) Watch, I'll do it again." Hills then proceeded to
spit in Evans's face a second time. This time, Hills's saliva also contacted Cruz-Nazario, who had
assisted with restraining Hills and transporting him back to his cell. Cruz-Nazario testified that when
Hills spit in Evans's face, the saliva also contacted the left side of his forehead. When the officers
finally secured Hills in his cell, Evans recalled, Hills "came to the door and said, 'I'm just going to
have to murder one of you.'"

 The incident was observed in part by correctional officers Richard Taylor,
Ismael Colon, and Madeline Adkins, each of whom testified for the State and corroborated the
accounts of Evans and Cruz-Nazario. Also admitted into evidence was a video recording taken
from one of the security cameras in the jail which captured Hills's first occurrence of spitting but
not the second.

 Hills testified in his defense. Hills denied the charges against him but claimed that
if he did spit in Evans's face, he had been "provoked" into doing so by Evans, who, according to
Hills, had antagonized him prior to the first instance of spitting and had choked him prior to the
second instance of spitting. (5) Throughout trial, Hills asserted that the security camera should have
recorded Evans's actions, and he claimed that because it did not, jail officials must have withheld
or tampered with the "missing" portions of the recording. However, the jail officials who testified
at trial explained that the camera simply failed to record the entirety of the incident, due to either a
camera malfunction or a lack of camera coverage in certain areas of the jail. It is the availability of
this recording and related evidence which forms the basis for Hills's issues on appeal.


ANALYSIS

Alleged Brady violation

 In his first issue, Hills asserts that the State violated Brady v. Maryland by
withholding certain portions of the video recording. See 373 U.S. at 87. The State responds that
there was no Brady violation because the prosecutors provided Hills with the only recording that
existed. The State also argues that Hills has failed to show how the allegedly withheld evidence was
material to his case.

 A defendant in a criminal case has no general right to pretrial discovery of evidence
in the State's possession. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); Pena v. State,
353 S.W.3d 797, 809 n.10 (Tex. Crim. App. 2011); Hall v. State, 283 S.W.3d 137, 163
(Tex. App.--Austin 2009, pet. ref'd). However, under Brady and its progeny, there exists a federal
constitutional right to certain minimal discovery. See United States v. Bagley, 473 U.S. 667 (1985);
United States v. Agurs, 427 U.S. 97 (1976); Pena, 353 S.W.3d at 809; Hall, 283 S.W.3d at 163. 
That right is violated only if: (1) the State failed to disclose evidence, regardless of the prosecution's
good or bad faith; (2) the withheld evidence is favorable to the accused; and (3) the evidence
is material, that is, there is a reasonable probability that had the evidence been disclosed, the
outcome of the trial would have been different. Hampton v. State, 86 S.W.3d 603, 612 (Tex. Crim.
App. 2002); Hall, 283 S.W.3d at 163. (6)

 It does not appear that Hills has preserved a Brady complaint for our review. To
preserve error, a complaint must be "made to the trial court by a timely request, objection, or motion
that . . . state[s] the grounds for the ruling that the complaining party sought from the trial court
with sufficient specificity to make the trial court aware of the complaint, unless the specific
grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A). The record must also
show that the trial court "ruled on the request, objection, or motion, either expressly or implicitly"
or "refused to rule on the request, objection, or motion, and the complaining party objected to the
refusal." Tex. R. App. P. 33.1(a)(2).

 Hills made no specific claim prior to trial, during trial, or in his motion for new trial
that the State had withheld exculpatory evidence in violation of Brady. Instead, after reviewing the
recording immediately prior to trial, Hills complained to the district court that the recording was
incomplete and that, as a result, "there's no way to say" what had happened during the unrecorded
portion of the incident. In response, the district court stated, "Well, that's what this trial is
about, sir." Hills then questioned "why in this circumstance that [camera] angle was not given." The
district court replied, "I'll let you address that in the course of this trial." Hills proceeded to do so,
extensively questioning several witnesses during trial regarding the operation of the security camera
and the recording that it had produced. Then, during his own testimony, Hills speculated, "And there
are [camera] angles that haven't been presented. And I feel as though that's been deliberately done
in an act of bad faith to hide further provokings [sic] on behalf of Corporeal Jimmy Evans because
he did choke me." Finally, in his closing argument, Hills asserted, "The exhibits contribute to
highlighting or elucidating, or what provoked me into doing what I did, along with what I call [an]
act of bad faith for the other angle of the whole incident to be excluded. That's . . . another showing
that my case . . . was damaged today, because that coverage would have clearly shown . . . the
man choking me."

 Even if we were to liberally construe Hills's trial arguments as a complaint that
the State had withheld exculpatory evidence in violation of Brady, the district court made no
express ruling on any such complaint. Therefore, for error to have been preserved, the district court
must have implicitly overruled Hills's purported Brady complaint. On this record, there does not
appear to be any such ruling, either during trial or at the hearing on the motion for new trial.
Cf. Pena, 353 S.W.3d at 807-08 (explaining preservation of error in context of Brady violation and
holding that "the record of the motion for a new trial hearing reflects that the Brady issue was
preserved for appeal"); Clarke v. State, 270 S.W.3d 573, 579 (Tex. Crim. App. 2008) (holding that
appellant preserved error by arguing Brady claim at hearing on motion for new trial). 

 However, even if we were to find that Hills properly raised a Brady complaint and
that the district court implicitly overruled that complaint, the record would support implied findings
by the district court that Hills had failed to establish a Brady violation. The record reflects that at
a pretrial hearing approximately three months prior to trial, the prosecutors provided the
video recording of the incident to Hills's standby counsel. The record supports a finding by the
district court that no recording existed other than the one that the State provided. At trial, several
witnesses attempted to explain to Hills why the camera did not record the entire incident. When
Hills asked Evans why the camera did not record the second instance of spitting, Evans testified,
"Because not every inch of the jail is covered by a camera." Later, Officer Taylor testified, "There
is a camera in front in the corner of the multipurpose door, but I don't believe the camera shows the
hall where you spat the second time on him." Additionally, there was testimony presented that the
camera might not have been functioning properly at the time of the incident. Officer Cruz-Nazario
testified that the camera "could work, but it had a very sensitive touch. It can automatically go on
its own or automatically go down." When asked if there were "any problems with the camera,"
Officer Adkins testified, "Oh, yes, ma'am. We had a work order put in on that camera for at least
two months." She added, "It was very sensitive. At certain times it would just go straight up into
the ceiling and just fixate on the ceiling. Then it would go straight to the floor. And it was all over
the place." In response to a question as to why the entire incident was not "preserved" on video,
Major Robert Patterson, the jail administrator, testified, "I think when you say it's not preserved, it's
misleading. If the system was malfunction[ing], if one of the camera angles was not operating, it's
not going to record. And it won't be able to be retrieved, and therefore, we can't archive it." Based
on this and other testimony, the district court could have reasonably determined that there was no
other recording for the State to disclose. See Hafdahl v. State, 805 S.W.2d 396, 399 n.3 (Tex. Crim.
App. 1990) ("Brady and its progeny do not require prosecuting authorities to disclose exculpatory
information to defendants that the State does not have in its possession and that is not known to
exist."); Harwood v. State, 961 S.W.2d 531, 545 (Tex. App.--San Antonio 1997, no pet.) ("The
State is not obligated to produce evidence of which it has no knowledge, and [appellant] has not
demonstrated that the State knew about or ever possessed the tapes.").

 Moreover, even if another recording of the incident existed and the State had failed
to disclose it, the record further supports an implied finding that Hills failed to demonstrate how the
undisclosed evidence would have been material to his case. Undisclosed evidence is "material"
to guilt or punishment "only if there is a reasonable probability that, had the evidence been
disclosed to the defense, the result of the proceeding would have been different." Hall, 283 S.W.3d
at 171 (quoting Bagley, 473 U.S. at 682). A "reasonable probability" is "a probability sufficient
to undermine confidence in the outcome." Id. In other words, "[t]he question is not whether the
defendant would more likely than not have received a different verdict with the evidence, but
whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy
of confidence." Id. (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)). Although the standard "is
not a sufficiency of the evidence test," the defendant must "show[] that the favorable evidence could
reasonably be taken to put the whole case in such a different light as to undermine confidence in the
verdict." Id. (quoting Kyles, 514 U.S. at 434-35). "The mere possibility that an item of undisclosed
information might have helped the defense, or might have affected the outcome of the trial, does
not establish 'materiality' in the constitutional sense." Hampton, 86 S.W.3d at 612 (quoting Agurs,
427 U.S. at 109). "Usually, a determination concerning the materiality prong of Brady involves
balancing the strength of the [favorable] evidence against the evidence supporting [the verdict]." 
Id. at 613. We must accordingly consider "the entire body of evidence" presented at trial. Id.

 This was a case in which multiple eyewitnesses observed the offenses and testified
as to what they saw. Both of the alleged victims also testified, as did the defendant. Thus, there was
considerable testimony in this case that supported the verdict, in addition to the video recording that
was admitted. The district court could have reasonably concluded that additional video evidence
of the incident might have shown, at most, Evans "provoking" Hills in the manner that Hills had
claimed. The record would support an implied finding that there was not a reasonable probability
that such evidence would have changed the outcome of the proceeding. No claim was made that
Hills's spitting was an act of self-defense as that term is defined in the penal code. See Tex. Penal
Code Ann. § 9.31 (West 2011). Therefore, the district court could have reasonably found that
Evans's alleged conduct, even if true, would not have justified Hills's spitting in the faces of Evans
and Cruz-Nazario. We overrule Hills's first issue.


Subpoena duces tecum

 In his second issue, Hills asserts that the trial court "furthered" the alleged Brady
violation by quashing what he characterizes as a subpoena duces tecum. In this issue, it appears that
Hills is essentially arguing that the district court prevented him from establishing a Brady violation
by excluding certain testimony and records that, in Hills's view, would have demonstrated that the
State had withheld exculpatory evidence.

 There is no merit to Hills's claim. The document that Hills characterizes as a
subpoena duces tecum was, for the most part, merely a list of witnesses that Hills had wanted to
call in his defense. (7) These witnesses were Major Robert Patterson, Lieutenant Charles Grogan,
District Clerk Sheila Norman, and an unspecified "designee" of the Texas Board of Pardons and
Paroles (the Board). Three of the four witnesses listed in the document--Patterson, Grogan, and
Norman--were subpoenaed by the district court per Hills's request and appeared in court to testify.
Norman was called to the stand but did not testify. (8) Patterson and Grogan, on the other hand,
testified extensively regarding the matters into which Hills inquired, although the district court
sustained several relevance objections by the State to certain questions posed by Hills. To the extent
that Hills is arguing that the district court abused its discretion in sustaining the State's relevance
objections, we disagree. The excluded testimony related to jail policies and grievance procedures
that, the district court could have reasonably concluded, had nothing to do with the issue of whether
Hills had committed the offenses of which he was charged. The district court would not have abused
its discretion in finding that such testimony was not relevant to the case. See Tex. R. Evid. 401;
State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006) ("[A] trial court's ruling admitting
or excluding evidence is reviewed on appeal for abuse of discretion."); Montgomery v. State,
810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (no abuse of discretion occurs so long as evidentiary
rulings are "within the zone of reasonable disagreement").

 The fourth witness that Hills had wanted to appear was an unspecified designee of
the Board of Pardons and Paroles. Unlike the other subpoenaed witnesses, Hills requested that this
witness provide documentary evidence, specifically records relating to the "actual date and time"
when Hills was allegedly granted "parole in absentia." The Board filed a motion to quash, which
the district court granted. During the hearing on the motion to quash, the Board stated that it was not
the custodian of records of the documents that Hills sought and thus could not provide copies of the
records as requested. The district court would not have abused its discretion in granting the motion
to quash on that ground. Additionally, "[a] subpoena duces tecum is not to be used as a discovery
weapon, but as an aid to discovery based upon a showing of materiality and relevance." Reece
v. State, 878 S.W.2d 320, 326 (Tex. App.--Houston [1st Dist.] 1994, no pet.). The district court
would not have abused its discretion in concluding that documents relating to whether and
when Hills was granted "parole in absentia" were not material to this case. We overrule Hills's
second issue.


Ineffective assistance of standby counsel

 In his third issue, Hills asserts that standby counsel provided ineffective assistance
by "partaking" in the alleged Brady violation. In this issue, Hills appears to argue that standby
counsel failed to deliver the video recording to him in a timely manner and that, as a result, Hills was
unable to effectively use the recording in his defense.

 It is well settled that there is no constitutional right to hybrid representation. See
Dunn v. State, 819 S.W.2d 510, 525-26 (Tex. Crim. App. 1991); Scarbrough v. State, 777 S.W.2d
83, 92 (Tex. Crim. App. 1989); Landers v. State, 550 S.W.2d 272, 280 (Tex. Crim. App. 1977).
Accordingly, federal courts have repeatedly held that there is no corresponding constitutional right
to the effective assistance of standby counsel. See, e.g., United States v. Oliver, 630 F.3d 397, 413-14 (5th Cir. 2011); United States v. Morrison, 153 F.3d 34, 55 (2nd Cir. 1998); United States
v. Windsor, 981 F.2d 943, 947 (7th Cir. 1992). (9) Thus, absent circumstances that are not implicated
here, Hills cannot obtain relief on such a claim.

 Moreover, even assuming that Hills had a constitutional right to the effective
assistance of standby counsel, we could not conclude on this record that Hills has established that
standby counsel was ineffective. To be entitled to relief, Hills must prove by a preponderance of the
evidence that (1) counsel's performance fell below an objective standard of reasonableness, and
(2) there is a reasonable probability that, but for counsel's deficient performance, the result of the
proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).
Thus, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct
so undermined the proper functioning of the adversarial process that the trial cannot be relied on as
having produced a just result." Id. at 686.

 The record reflects the following. At a pretrial hearing approximately three months
prior to trial, the State provided the video recording of the incident to Hills's standby counsel. At
that time, standby counsel informed the district court that he had the ability to play the recording
on his laptop computer and that he would "make an appointment with Mr. Hills in the next day or
two" so that Hills could review the recording. Approximately two months later, at another pretrial
hearing, Hills requested a continuance, informing the district court that he had not yet had an
opportunity to review the recording. In response, standby counsel explained that he had experienced
difficulty in playing the recording on his computer but that he was in the process of resolving the
issue. The district court directed standby counsel to show the recording to Hills within ten days.

 On the day of trial, Hills again complained that he had not had an opportunity to
review the recording. However, standby counsel informed the district court that he had visited the
jail three times but that Hills had refused to see him each time. Hills claimed that standby counsel
had not visited him until "the last minute," but the district court reminded Hills that he was
representing himself and that it was "up to [Hills] whether or not [he] communicated with [standby
counsel]." After standby counsel again explained that he had attempted to visit with Hills on three
occasions, including the night before trial, but that Hills had refused to see him, the district court
took a recess and allowed Hills to review the recording in court. After Hills had reviewed the
recording, the trial began.

 We could not conclude on the above record that standby counsel's performance fell
below an objective standard of reasonableness. Counsel stated that he had visited Hills at the jail
on three occasions but that Hills had refused to see him each time. As the district court explained,
because Hills was representing himself, it was his responsibility to communicate with standby
counsel in order to arrange a time to review the recording. That Hills chose not to communicate
with standby counsel does not establish that standby counsel's performance was deficient.

 Moreover, even if standby counsel's performance had been deficient, we could not
conclude on this record that there is a reasonable probability that but for counsel's performance, the
result of the proceeding would have been different. As we have already explained, this was a case
that turned not on the video evidence but on the testimony of the eyewitnesses who had observed and
were involved in the incident. And, as Hills acknowledges, the recording does not show the entirety
of the incident. Thus, we could not conclude that if Hills had viewed the recording earlier, it would
have affected his defense to such a degree as to undermine our confidence in the outcome of the
proceeding. We overrule Hills's third issue.


CONCLUSION

 We affirm the judgments of the district court.



 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: July 20, 2012

Do Not Publish
1. Punishment was enhanced by Hills's prior conviction in South Carolina for the offense of
distribution of crack cocaine. The record also reflects that Hills had a prior conviction in Texas for
the offense of assault on a public servant and a prior federal conviction for the offense of possession
of a firearm by a convicted felon. 
2. The arguments in Hills's brief are presented in such a manner as to be nearly
incomprehensible. In identifying his issues on appeal, we have construed the briefing rules liberally
as we are required to do, and looked to the substance of his contentions as best as we can discern
them. See Tex. R. App. P. 38.9. However, to the extent that Hills purports to raise any additional
issues in his brief, we find that they are inadequately briefed and are therefore waived. See Tex. R.
App. P. 38.1(i) (appellant's brief must contain clear and concise argument for contentions made,
with appropriate citations to authorities and record); see also Faretta v. California, 422 U.S. 806,
834 n.46 (1975) ("The right of self-representation is not . . . a license not to comply with relevant
rules of procedural and substantive law."); Alvarado v. State, 912 S.W.2d 199, 210 (Tex. Crim.
App. 1995) ("[T]he right to appellate review extends only to complaints made in accordance with
our rules of appellate procedure."); Perez v. State, 261 S.W.3d 760, 764 n.2 (Tex. App.--Houston
[14th Dist.] 2008, pet. ref'd) ("[W]e hold a pro se appellant to the same standards as a licensed
attorney, and require [him] to comply with applicable laws and rules of procedure.").
3. We have previously consolidated the causes on appeal for record and briefing purposes.
See Hills v. State, Nos. 03-11-00238-CR, 03-11-00473-CR, 03-11-00474-CR, 03-11-00525-CR,
2012 Tex. App. LEXIS 2125 (Tex. App.--Austin Mar. 15, 2012) (per curiam order). In appellate
cause number 03-11-00238-CR, Hills has filed a notice of appeal from an order relating to a pretrial
motion that he had filed seeking to recuse the district court judge, which was denied. In appellate
cause number 03-11-00525-CR, Hills has filed a notice of appeal from the district court's denial
of his motion for new trial. In appellate cause number 03-11-00473-CR, Hills has filed a notice of
appeal from the final judgment of conviction in trial court cause number 67020. In appellate cause
number 03-11-00474-CR, Hills has filed a notice of appeal from the final judgment of conviction
in trial court cause number 67021. On appeal, Hills has not briefed the issues that were raised in his
recusal motion or in his motion for new trial. Accordingly, any issues involving those orders have
been waived. See Tex. R. App. P. 38.1.

 
4. The record does not specify the "case" to which Hills was referring. However, the record
reflects that Hills and Evans had a history of interaction at the jail which included Hills filing a
grievance against Evans for interfering with Hills's "business" and "legal disputes."
5. Evans testified that what Hills characterized as "choking" was instead Evans putting his
hands to Hills's face in an attempt to restrain him and prevent further spitting.
6. Additionally, the evidence central to the Brady claim must be admissible in court. See
Ex parte Kimes, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993).


7. A subpoena duces tecum, in contrast to an ordinary subpoena, is issued when a witness has
"in his possession any instrument of writing or other thing desired as evidence." Tex. Code Crim.
Proc. Ann. art. 24.02 (West 2009). The subpoena duces tecum "may specify such evidence and
direct that the witness bring the same with him and produce it in court." Id. With one exception
noted below, Hills's document did not refer to any such evidence.
8. The first question that Hills asked Norman related to complaints that Hills had filed against
the jail. After the district court sustained a relevance objection by the State, Hills had no other
questions for the witness and she was excused.
9. In fact, Hills was the appellant in one such case. See United States v. Hills, 425 Fed. Appx.
292, 296-97 (5th Cir. 2011) (per curiam).